**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANTONIO TINOCO, BRUCE M. TODD, BYRON YOUNG, CHARLES SCOTT, CHRISTOPHER KIRKLAND, DANIEL HARDY, DARRELL HUDSON, ELON LARKIN, JAMES MILLER, JEROME BROWN, JESSE LOVE, JOSEPH DUTTON, KARDELL PERRY, KEITH JOHNSON, KEITH JONES, KEVIN JOHNSON, MARCUS CONNER, MELANIE GRAHAM, MELVIN GARDNER, MICHAEL EDWARDS, MICHAEL PERKINS, MIKE SCHMELTER, NATHANIEL THOMPSON, RAYMOND JACKSON, ROBERT HOUSE JR, RONALD MALKOWSKI, THEODORE OLIVER, TIMOTHY MUHAMMAD, TONY WRIGHT, TORNELL WILLIAMS, YOVEL SULLIVAN, MICHAEL CRAWFORD, BENNY ALPHONSE, ANTHONY ARRINGTON, ANTHONY CARTER, COREY WEATHERSBY, DANIEL GALLEGOS, DAVID MCKEY, EMANUEL TRIPOLITAKIS, LORENZO WIGGINS, MATTIE LACY, NOE CASTANEDA, RAFAEL ESPARZA, JR., RICHARD VILLARREAL, ROBERT LATHAM, ANDRENZ PAWINSKI, FREDERICK MACKEY, JEFFREY VAUGHN, KERNELL MASSEY, LEE TAYLOR, REYMUNDO HERRERA, RICHARD ECHAVARRIA, RONALD KELM, SERGIO RIVERA, TONYA LAYE, ISAAC BRADFORD, PARRIS JONES, ALBERT SANCHEZ JR., ANTHONY PORTO, DWIGHT CHARLES JR, GREGORY O'CONNOR, HAROLD LOFTON, JAMES TAYLOR, MANUEL A. HERNANDEZ JR., RODNEY AUSTIN, THEODORE STRUCINSKI, KEITH SMITH, BRUCE BLANCHETTE, EARNEST MAYFIELD, KEITH REED, KIRK PARRO, VIRGIL GREEN, ADAM PAVUR, CHARLES PHILLIPS, IAN NIEMIEC, JEFF KEEN, JOE BOWEN, LARRY

CASE NO. 14-cv-1456

Judge

Magistrate Judge

1

CECHOWSKI, JOSE F AMEZOL, ALVIN THOMPSON, BRIAN KUBE, DAVID HOWARD, DAVID MASINO, EDREICK JUSTICE, HAROLD SLAYTON, MICHAEL BOROWIEC, TIMOTHY LEO, ADAM EAKINS, BRIAN ERICSON, ROBERT BALMES, ROBERT PASSI, JAMES TENNESSEN, LEE FABER, RICHARD WOOD, JOSEPH HONKISZ, NICHOLAS VULGARIS, BYRON ETAPA, GILBERTO OLIVAREZ, JULIO INOSTROZA, VICTOR BALLARD, DAVID HILLIARD, MICHAEL LAMB, PEREGRINO AUSTRIA, DARYL ADKINS, THEODOUS HUTCHERSON, STEPHAN DALLAVALLE, JEFFREY PALENSKE, STEPHEN MUELLER, DONALD SIKORSKI, IGNACIO GALLEGOS, KEITH DARNELL, BRYAN RADA, JOHN MOERSCH, JASON GREEN, MATTHEW CHAPPERON, GREGG MCCOMB, TIMOTHY MCNALLY, HIRAM ANDERSON, PHILLIP LYONS, RICHARD MARSH, JAMES RICE, THOMAS HUCKER, EFRAN ARVIZU, FRANK VAISVILA, CURTIS TURNER, JOHN HOUGH, THOMAS MORTON, AND WINSTON HODGES,

     Plaintiffs,

vs.

ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T Illinois

     Defendant.

## COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 ET SEQ.

Plaintiffs, ANTONIO TINOCO, BRUCE M. TODD, BYRON YOUNG, CHARLES SCOTT,

CHRISTOPHER KIRKLAND, DANIEL HARDY, DARRELL HUDSON, ELON LARKIN, JAMES

MILLER, JEROME BROWN, JESSE LOVE, JOSEPH DUTTON, KARDELL PERRY, KEITH

JOHNSON, KEITH JONES, KEVIN JOHNSON, MARCUS CONNER, MELANIE GRAHAM, MELVIN

GARDNER, MICHAEL EDWARDS, MICHAEL PERKINS, MIKE SCHMELTER, NATHANIEL

2

THOMPSON, RAYMOND JACKSON, ROBERT HOUSE JR, RONALD MALKOWSKI, THEODORE OLIVER, TIMOTHY MUHAMMAD, TONY WRIGHT, TORNELL WILLIAMS, YOVEL  SULLIVAN, MICHAEL CRAWFORD, BENNY ALPHONSE, ANTHONY ARRINGTON, ANTHONY CARTER, COREY WEATHERSBY, DANIEL GALLEGOS, DAVID MCKEY, EMANUEL TRIPOLITAKIS, LORENZO WIGGINS, MATTIE LACY, NOE CASTANEDA, RAFAEL ESPARZA, JR., RICHARD VILLARREAL, ROBERT LATHAM, ANDRENZ PAWINSKI, FREDERICK MACKEY, JEFFREY VAUGHN, KERNELL MASSEY, LEE TAYLOR, REYMUNDO HERRERA, RICHARD ECHAVARRIA, RONALD KELM, SERGIO RIVERA, TONYA LAYE, ISAAC BRADFORD, PARRIS JONES, ALBERT SANCHEZ JR., ANTHONY PORTO, DWIGHT CHARLES JR, GREGORY O'CONNOR, HAROLD LOFTON, JAMES TAYLOR, MANUEL A. HERNANDEZ JR., RODNEY AUSTIN, THEODORE STRUCINSKI, KEITH SMITH, BRUCE BLANCHETTE, EARNEST MAYFIELD, KEITH REED, KIRK PARRO, VIRGIL GREEN, ADAM PAVUR, CHARLES PHILLIPS, IAN NIEMIEC, JEFF KEEN, JOE BOWEN, LARRY CECHOWSKI, JOSE F AMEZOL, ALVIN THOMPSON, BRIAN KUBE, DAVID HOWARD, DAVID MASINO, EDREICK JUSTICE, HAROLD SLAYTON, MICHAEL BOROWIEC, TIMOTHY LEO, ADAM EAKINS, BRIAN ERICSON, ROBERT BALMES, ROBERT PASSI, JAMES TENNESSEN, LEE FABER, RICHARD WOOD, JOSEPH HONKISZ, NICHOLAS  VULGARIS, BYRON ETAPA, GILBERTO OLIVAREZ, JULIO INOSTROZA, VICTOR BALLARD, DAVID HILLIARD, MICHAEL LAMB, PEREGRINO AUSTRIA, DARYL ADKINS, THEODOUS HUTCHERSON, STEPHAN DALLAVALLE, JEFFREY PALENSKE, STEPHEN MUELLER, DONALD SIKORSKI, IGNACIO GALLEGOS, KEITH DARNELL, BRYAN RADA, JOHN MOERSCH, JASON GREEN, MATTHEW CHAPPERON, GREGG MCCOMB, TIMOTHY MCNALLY, HIRAM ANDERSON, PHILLIP LYONS, RICHARD MARSH, JAMES RICE, THOMAS HUCKER, EFRAN ARVIZU, FRANK VAISVILA, CURTIS TURNER, JOHN HOUGH,

THOMAS MORTON, AND WINSTON HODGES, by and through their attorneys, Aaron B. Maduff, Walker R. Lawrence and Michael L. Maduff of Maduff & Maduff, LLC, for their Complaint, and having filed their consents in Group Exhibits A – Z filed herewith, against Defendant allege and state as follows:

I.    **INTRODUCTION**

1.    Plaintiffs work or worked for Defendant, one of largest providers of local telephone service in Illinois and surrounding states. Plaintiffs are hourly non-exempt employees that were not paid overtime compensation for all hours worked in excess of 40 in a week. Defendant's violations of federal overtime laws were willful.

2.    This lawsuit has been filed on behalf of individuals who work or worked for Defendant in garages in this District.

3.    These Plaintiffs are seeking to assert those claims that were not certified to go forward on a collective basis in the matter *Blakes v. Ill. Bell. Tel. Co.*, Case No. 11-CV-336 in the U.S. District Court for the Northern District of Illinois ("*Blakes* Action"). The order decertifying those claims was entered on December 17, 2013, but, by its terms, did not go into effect until February 28, 2014, to allow those individuals impacted by it to file individual claims such as those raised here.

II.    **PARTIES**

4.    Defendant Illinois Bell Telephone Company, (hereinafter "Illinois Bell") is a company incorporated in Illinois, with its principal place of business in the state of Illinois, and doing business within the territorial limits of this Court. Defendant Illinois Bell is and was at all relevant times an employer and an enterprise engaged in commerce or the production of goods for commerce within the definitions of 29 U.S.C. §203(d) and §203(s).

5.     Defendant employs, or has employed, these Plaintiffs across Illinois as Cable Splicers.

**Garage - 8901 S State St Chicago, IL**

6.     Plaintiff, Antonio Tinoco (Plaintiff "Tinoco") began working for Illinois Bell on or about August 06, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Tinoco's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

7.     Plaintiff, Bruce M. Todd (Plaintiff "Todd") began working for Illinois Bell on or about October 15, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Todd's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 8901 S State St Chicago, IL, and 2300 W 63rd St Chicago, IL.

8.     Plaintiff, Byron Young (Plaintiff "Young") began working for Illinois Bell on or about March 19, 2001 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Young's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least  3

5

Garage(s), including 233 W 76th St Chicago, IL, 4533 W Roscoe St Chicago, IL, and 8901 S State St Chicago, IL.

9.      Plaintiff, Charles Scott (Plaintiff "Scott") began working for Illinois Bell on or about February 05, 2001 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Scott's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 233 W 76th St Chicago, IL, 7676 W 79th St Bridgeview, IL, and 8901 S State St Chicago, IL.

10.     Plaintiff, Christopher Kirkland (Plaintiff "Kirkland") began working for Illinois Bell on or about September 04, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Kirkland's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

11.     Plaintiff, Daniel Hardy (Plaintiff "Hardy") began working for Illinois Bell on or about July 30, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Hardy's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell

as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

12.     Plaintiff, Darrell Hudson (Plaintiff "Hudson") began working for Illinois Bell on or about August 12, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Hudson's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 3102 169th Pl Hammond, In, and 8901 S State St Chicago, IL.

13.     Plaintiff, Elon Larkin (Plaintiff "Larkin") began working for Illinois Bell on or about July 16, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Larkin's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

14.     Plaintiff, James Miller (Plaintiff "Miller") began working for Illinois Bell on or about February 12, 1990 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Miller's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

15.     Plaintiff, Jesse Love (Plaintiff "Love") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Love's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 12501 S Pulaski Rd Alsip, IL, 233 W 76th St Chicago, IL, and  8901 S State St Chicago, IL.

16.     Plaintiff, Joseph Dutton (Plaintiff "Dutton") began working for Illinois Bell on or about December 28, 1998 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Dutton's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 8901 S State St Chicago, IL, and 233 W 76th St Chicago, IL.

17.     Plaintiff, Kardell Perry (Plaintiff "Perry") began working for Illinois Bell on or about February 11, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Perry's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

18.     Plaintiff, Keith Johnson (Plaintiff "Johnson") began working for Illinois Bell on or about March 05, 2007 and, at times between the date three years before he filed his

Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Johnson's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 425 W 195th St Glenwood, IL, 8901 S State St Chicago, IL, and 12501 S Pulaski Rd Alsip, IL.

19. Plaintiff, Keith Jones (Plaintiff "Jones") began working for Illinois Bell on or about January 22, 2001 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Jones's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 8901 S State St Chicago, IL, 233 W 76th St Chicago, IL, and 4533 W Roscoe St Chicago, IL.

20. Plaintiff, Kevin Johnson (Plaintiff "Johnson") began working for Illinois Bell on or about August 13, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Johnson's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 425 W 195th St Glenwood, IL, and 8901 S State St Chicago, IL.

21. Plaintiff, Marcus Conner (Plaintiff "Conner") began working for Illinois Bell on or about April 02, 2007 and, at times between the date three years before he filed his

Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Conner's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 12501 S Pulaski Rd Alsip, IL, 1391 Abbott Ct Buffalo Grove, IL, and 8901 S State St Chicago, IL.

22.     Plaintiff, Melanie Graham (Plaintiff "Graham") began working for Illinois Bell on or about September 05, 1989 and, at times between the date three years before she filed Her Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Graham's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 233 W 76th St Chicago, IL, 7676 W 79th St Bridgeview, IL, and 8901 S State St Chicago, IL.

23.     Plaintiff, Melvin Gardner (Plaintiff "Gardner") began working for Illinois Bell on or about March 14, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Gardner's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

24.     Plaintiff, Michael Edwards (Plaintiff "Edwards") began working for Illinois Bell on or about July 17, 2000 and, at times between the date three years before he filed his

Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Edwards's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

25.     Plaintiff, Michael Perkins (Plaintiff "Perkins") began working for Illinois Bell on or about January 28, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Perkins's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

26.     Plaintiff, Mike Schmelter (Plaintiff "Schmelter") began working for Illinois Bell on or about April 02, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Schmelter's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 1391 Abbott Ct Buffalo Grove, IL, 8901 S State St Chicago, IL, and 12501 S Pulaski Rd Alsip, IL.

27.     Plaintiff, Nathaniel Thompson (Plaintiff "Thompson") began working for Illinois Bell on or about December 10, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the

present, worked as a Cable Splicer for Illinois Bell. Plaintiff Thompson's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

28.     Plaintiff, Raymond Jackson (Plaintiff "Jackson") began working for Illinois Bell on or about March 14, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Jackson's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

29.     Plaintiff, Robert House Jr (Plaintiff "House Jr.") began working for Illinois Bell on or about March 05, 2001 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff House Jr.'s renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 8901 S State St Chicago, IL, 233 W 76th St Chicago, IL, and 533 W Roscoe St Chicago, IL.

30.     Plaintiff, Ronald Malkowski (Plaintiff "Malkowski") began working for Illinois Bell on or about March 12, 1990 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Malkowski's renewed Consent is

attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 8901 S State St Chicago, IL, and 12501 S Pulaski Rd Alsip, IL.

31.     Plaintiff, Theodore Oliver (Plaintiff "Oliver") began working for Illinois Bell on or about September 10, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Oliver's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

32.     Plaintiff, Timothy Muhammad (Plaintiff "Muhammad") began working for Illinois Bell on or about April 09, 2001 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Muhammad's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least  2 Garage(s), including 233 W 76th St Chicago, IL, and 8901 S State St Chicago, IL.

33.     Plaintiff, Tony Wright (Plaintiff "Wright") began working for Illinois Bell on or about May 12, 1986 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Wright's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 5

Garage(s), including 425 W 195th St Glenwood, IL, 8901 S State St Chicago, IL, 233 W 76th St Chicago, IL, 2011 W Hastings St Chicago, IL, and 2011 W Hastings St Chicago, IL.

34.     Plaintiff, Tornell Williams (Plaintiff "Williams") began working for Illinois Bell on or about March 14, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Williams's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 8901 S State St Chicago, IL.

35.     Plaintiff, Yovel Sullivan (Plaintiff "Sullivan") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Sullivan's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 425 W 195th St Glenwood, IL, and 8901 S State St Chicago, IL.

36.     Plaintiff, Michael Crawford (Plaintiff "Crawford") began working for Illinois Bell on or about June 04, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Crawford's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 425 W 195th St Glenwood, IL, and 8901 S State St Chicago, IL.

37.     Plaintiff, Benny Alphonse (Plaintiff "Alphonse") began working for Illinois Bell on or about July 17, 2000 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit A) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Alphonse's renewed Consent is attached hereto in Group Exhibit A - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 8901 S State St Chicago, IL, and 233 W 76th St Chicago, IL.

**Garage - 2011 W Hastings St Chicago, IL**

38.     Plaintiff, Anthony Arrington (Plaintiff "Arrington") began working for Illinois Bell on or about August 13, 1990 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Arrington's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

39.     Plaintiff, Anthony Carter (Plaintiff "Carter") began working for Illinois Bell on or about August 06, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Carter's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

40.     Plaintiff, Corey Weathersby (Plaintiff "Weathersby") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Weathersby's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

41.     Plaintiff, Daniel Gallegos (Plaintiff "Gallegos") began working for Illinois Bell on or about December 10, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Gallegos's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

42.     Plaintiff, David Mckey (Plaintiff "Mckey") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Mckey's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

43.     Plaintiff, Emanuel Tripolitakis (Plaintiff "Tripolitakis") began working for Illinois Bell on or about April 30, 2001 and, at times between the date three years before he

filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Tripolitakis's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

44.     Plaintiff, Lorenzo Wiggins (Plaintiff "Wiggins") began working for Illinois Bell on or about May 30, 1986 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Wiggins's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

45.     Plaintiff, Mattie Lacy (Plaintiff "Lacy") began working for Illinois Bell on or about April 21, 1986 and, at times between the date three years before she filed Her Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Lacy's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

46.     Plaintiff, Noe Castaneda (Plaintiff "Castaneda") began working for Illinois Bell on or about February 10, 1992 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Castaneda's renewed Consent is attached

hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 2011 W Hastings St Chicago, IL, and 2300 W 63rd St Chicago.

47.     Plaintiff, Rafael Esparza, Jr. (Plaintiff "Esparza,") began working for Illinois Bell on or about February 22, 2008 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Esparza,'s renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

48.     Plaintiff, Richard Villarreal (Plaintiff "Villarreal") began working for Illinois Bell on or about September 05, 1995 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Villarreal's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 425 W 195th St Glenwood, IL, 300 Gougar Rd New Lenox, IL, and 2011 W Hastings St Chicago, IL.

49.     Plaintiff, Robert Latham (Plaintiff "Latham") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Latham's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell

as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 2011 W Hastings St Chicago, IL, and 2300 W 63rd St Chicago, IL.

50.     Plaintiff, Andrenz Pawinski (Plaintiff "Pawinski") began working for Illinois Bell on or about January 15, 2001 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Pawinski's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 7676 W 79th St Bridgeview, IL, 2300 W 63rd St Chicago, IL, and 2011 W Hastings St Chicago, IL.

51.     Plaintiff, Curtis Turner (Plaintiff "Turner") began working for Illinois Bell on or about April 01, 1985 and, at times between the date three years before  filed  Consent in the Blakes Action (attached hereto in Group Exhibit B) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Turner's renewed Consent is attached hereto in Group Exhibit B - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2011 W Hastings St Chicago, IL.

**Garage - 4533 W Roscoe St Chicago, IL**

52.     Plaintiff, Frederick Mackey (Plaintiff "Mackey") began working for Illinois Bell on or about September 04, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Mackey's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an

employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 4533 W Roscoe St Chicago, IL, and 9211 Gage Ave Franklin Park, IL.

53.     Plaintiff, Jeffrey Vaughn (Plaintiff "Vaughn") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Vaughn's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 4533 W Roscoe St Chicago, IL.

54.     Plaintiff, Kernell Massey (Plaintiff "Massey") began working for Illinois Bell on or about June 11, 2001 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Massey's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 4533 W Roscoe St Chicago, IL.

55.     Plaintiff, Lee Taylor (Plaintiff "Taylor") began working for Illinois Bell on or about July 30, 2001 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Taylor's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell

as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 4533 W Roscoe St Chicago, IL, and 2300 W 63rd St Chicago, IL.

56.     Plaintiff, Reymundo Herrera (Plaintiff "Herrera") began working for Illinois Bell on or about December 11, 2000 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Herrera's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 301 N Arthur Ave Mount Prospect, IL, 4533 W Roscoe St Chicago, IL, and 929 W Cermak Chicago, IL.

57.     Plaintiff, Richard Echavarria (Plaintiff "Echavarria") began working for Illinois Bell on or about October 01, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Echavarria's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 4533 W Roscoe St Chicago, IL.

58.     Plaintiff, Ronald Kelm (Plaintiff "Kelm") began working for Illinois Bell on or about October 01, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Kelm's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 4533 W Roscoe St Chicago, IL, and 921 Pitner Ave Evanston, IL.

59.     Plaintiff, Sergio Rivera (Plaintiff "Rivera") began working for Illinois Bell on or about April 29, 2001 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Rivera's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 4533 W Roscoe St Chicago, IL.

60.     Plaintiff, Tonya Laye (Plaintiff "Laye") began working for Illinois Bell on or about September 04, 2007 and, at times between the date three years before she filed Her Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Laye's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 4533 W Roscoe St Chicago, IL.

61.     Plaintiff, Isaac Bradford (Plaintiff "Bradford") began working for Illinois Bell on or about April 09, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Bradford's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 4533 W Roscoe St Chicago, IL, and 900 N Villa Ave Villa Park, IL.

62.     Plaintiff, Parris Jones (Plaintiff "Jones") began working for Illinois Bell on or about April 23, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit C) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Jones's renewed Consent is attached hereto in Group Exhibit C - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 1725 Winnetka Ave Northfield, IL, and 4533 W Roscoe St Chicago, IL.

**Garage - 7676 W 79Th St Bridgeview, IL**

63.     Plaintiff, Albert Sanchez Jr. (Plaintiff "Sanchez") began working for Illinois Bell on or about August 27, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Sanchez's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 7676 W 79th St Bridgeview, IL.

64.     Plaintiff, Anthony Porto (Plaintiff "Porto") began working for Illinois Bell on or about August 28, 1995 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Porto's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 7676 W 79th St Bridgeview, IL, and 9211 Gage Ave Franklin Park, IL.

65.     Plaintiff, Dwight Charles Jr (Plaintiff "Charles") began working for Illinois Bell on or about March 19, 2001 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Charles's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 7676 W 79th St Bridgeview, IL, and 12501 S Pulaski Rd Alsip, IL.

66.     Plaintiff, Gregory O'Connor (Plaintiff "O'Connor") began working for Illinois Bell on or about December 04, 2000 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff O'Connor's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 7676 W 79th St Bridgeview, IL, 2300 W 63rd St Chicago, IL, and 929 W Cermak Chicago, IL.

67.     Plaintiff, Harold Lofton (Plaintiff "Lofton") began working for Illinois Bell on or about December 10, 2000 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Lofton's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 7676 W 79th St Bridgeview, IL, 2300 W 63rd St Chicago, IL, and 929 W Cermak Chicago, IL.

24

68.     Plaintiff, James Taylor (Plaintiff "Taylor") began working for Illinois Bell on or about August 20, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Taylor's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 7676 W 79th St Bridgeview, IL.

69.     Plaintiff, Manuel A. Hernandez Jr. (Plaintiff "Hernandez Jr.") began working for Illinois Bell on or about and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Hernandez Jr.'s renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 7676 W 79th St Bridgeview, IL.

70.     Plaintiff, Rodney Austin (Plaintiff "Austin") began working for Illinois Bell on or about March 14, 2008 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Austin's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 7676 W 79th St Bridgeview, IL.

71.     Plaintiff, Theodore Strucinski (Plaintiff "Strucinski") began working for Illinois Bell on or about July 16, 1979 and, at times between the date three years before he

filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Strucinski's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 7676 W 79th St Bridgeview, IL.

72.     Plaintiff, Keith Smith (Plaintiff "Smith") began working for Illinois Bell on or about August 18, 1999 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit D) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Smith's renewed Consent is attached hereto in Group Exhibit D - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 7676 W 79th St Bridgeview, IL, 2300 W 63rd St Chicago, IL, and 929 W Cermak Chicago, IL.

**Garage - 425 W 195Th St Glenwood, IL**

73.     Plaintiff, Bruce Blanchette (Plaintiff "Blanchette") began working for Illinois Bell on or about September 12, 1988 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit E) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Blanchette's renewed Consent is attached hereto in Group Exhibit E - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 425 W 195th St Glenwood, IL.

74.     Plaintiff, Earnest Mayfield (Plaintiff "Mayfield") began working for Illinois Bell on or about September 10, 2007 and, at times between the date three years before he

filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit E) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Mayfield's renewed Consent is attached hereto in Group Exhibit E - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 425 W 195th St Glenwood, IL.

75.     Plaintiff, Keith Reed (Plaintiff "Reed") began working for Illinois Bell on or about March 04, 1993 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit E) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Reed's renewed Consent is attached hereto in Group Exhibit E - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 300 Gougar Rd New Lenox, IL, and 425 W 195th St Glenwood, IL.

76.     Plaintiff, Kirk Parro (Plaintiff "Parro") began working for Illinois Bell on or about March 21, 1979 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit E) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Parro's renewed Consent is attached hereto in Group Exhibit E - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 1050 Hamilton Ave University Park, IL, 425 W 195th St Glenwood, IL, and 13235 Southwest Hwy Orland Park, IL.

77.     Plaintiff, Virgil Green (Plaintiff "Green") began working for Illinois Bell on or about August 04, 1986 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit E) to the present, worked as

27

a Cable Splicer for Illinois Bell. Plaintiff Green's renewed Consent is attached hereto in Group Exhibit E - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 425 W 195th St Glenwood, IL.

**Garage - 929 W Cermak Chicago, IL**

78.    Plaintiff, Adam Pavur (Plaintiff "Pavur") began working for Illinois Bell on or about March 12, 2001 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Pavur's renewed Consent is attached hereto in Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 200 Mooney Dr Bourbonnais, IL, and 929 W Cermak Chicago, IL.

79.    Plaintiff, Charles Phillips (Plaintiff "Phillips") began working for Illinois Bell on or about April 24, 2000 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Phillips's renewed Consent is attached hereto in Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 1325 South St Elgin, IL, and 929 W Cermak Chicago, IL.

80.    Plaintiff, Ian Niemiec (Plaintiff "Niemiec") began working for Illinois Bell on or about November 13, 2000 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Niemiec's renewed Consent is attached hereto in

Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 929 W Cermak Chicago, IL.

81.    Plaintiff, Jeff Keen (Plaintiff "Keen") began working for Illinois Bell on or about April 01, 2001 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Keen's renewed Consent is attached hereto in Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 900 N Villa Ave Villa Park, IL, and 929 W Cermak Chicago, IL.

82.    Plaintiff, Joe Bowen (Plaintiff "Bowen") began working for Illinois Bell on or about March 26, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Bowen's renewed Consent is attached hereto in Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 900 N Villa Ave Villa Park, IL, and 929 W Cermak Chicago, IL.

83.    Plaintiff, Larry Cechowski (Plaintiff "Cechowski") began working for Illinois Bell on or about September 21, 1987 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Cechowski's renewed Consent is attached hereto in Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an

employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 200 W 63rd St Westmont, IL, and 929 W Cermak Chicago, IL.

84.      Plaintiff, Jose F Amezol (Plaintiff "Amezola") began working for Illinois Bell on or about December 26, 2000 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Amezola's renewed Consent is attached hereto in Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 2020 Production Dr Saint Charles, IL, and 929 W Cermak Chicago, IL.

85.      Plaintiff, Alvin Thompson (Plaintiff "Thompson") began working for Illinois Bell on or about June 04, 2007 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Thompson's renewed Consent is attached hereto in Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 425 W 195th St Glenwood, IL, and 929 W Cermak Chicago, IL.

86.      Plaintiff, Brian Kube (Plaintiff "Kube") began working for Illinois Bell on or about April 23, 2001 and, at times between the date three years before he filed his Consent in the Blakes Action (attached hereto in Group Exhibit F) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Kube's renewed Consent is attached hereto in Group Exhibit F - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell

as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 929 W Cermak Chicago, IL.

### Garage - 13235 Southwest Hwy Orland Park, IL

87.    Plaintiff, David Howard (Plaintiff "Howard") began working for Illinois Bell on or about March 29, 1971 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit G) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Howard's renewed Consent is attached hereto in Group Exhibit G - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 13235 Southwest Hwy Orland Park, IL.

88.    Plaintiff, David Masino (Plaintiff "Masino") began working for Illinois Bell on or about November 23, 1970 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit G) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Masino's renewed Consent is attached hereto in Group Exhibit G - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 13235 Southwest Hwy Orland Park, IL.

89.    Plaintiff, Edreick Justice (Plaintiff "Justice") began working for Illinois Bell on or about February 22, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit G) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Justice's renewed Consent is attached hereto in Group Exhibit G - 1. At times relevant to this lawsuit Plaintiff has been an employee  of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 13235 Southwest Hwy Orland Park, IL.

90.     Plaintiff, Harold Slayton (Plaintiff "Slayton") began working for Illinois Bell on or about June 11, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit G) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Slayton's renewed Consent is attached hereto in Group Exhibit G - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 13235 Southwest Hwy Orland Park, IL.

91.     Plaintiff, Michael Borowiec (Plaintiff "Borowiec") began working for Illinois Bell on or about February 13, 1973 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit G) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Borowiec's renewed Consent is attached hereto in Group Exhibit G - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 1050 Hamilton Ave University Park, IL, 300 Gougar Rd New Lenox, IL,  and 13235 Southwest Hwy Orland Park, IL.

92.     Plaintiff, Timothy Leo (Plaintiff "Leo") began working for Illinois Bell on or about May 21, 1979 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit G) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Leo's renewed Consent is attached hereto in Group Exhibit G - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that

term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 13235 Southwest Hwy Orland Park, IL, and 300 Gougar Rd New Lenox, IL.

### Garage - 1391 Abbott Ct Buffalo Grove, IL

93.     Plaintiff, Adam Eakins (Plaintiff "Eakins") began working for Illinois Bell on or about October 23, 2000 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhbiit H) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Eakins's renewed Consent is attached hereto in Group Exhbiit H - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 3 Garage(s), including 1391 Abbott Ct Buffalo Grove, IL, 1230 Mitchell Blvd Schaumburg, IL, and 2020 Production Dr Saint Charles, IL.

94.     Plaintiff, Brian Ericson (Plaintiff "Ericson") began working for Illinois Bell on or about January 02, 1979 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhbiit H) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Ericson's renewed Consent is attached hereto in Group Exhbiit H - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1391 Abbott Ct Buffalo Grove, IL.

95.     Plaintiff, Robert Balmes (Plaintiff "Balmes") began working for Illinois Bell on or about May 08, 1989 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhbiit H) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Balmes's renewed Consent is attached hereto in Group Exhbiit H - 1. At times relevant to this lawsuit Plaintiff has been an employee  of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1391 Abbott Ct Buffalo Grove, IL.

96.     Plaintiff, Robert Passi (Plaintiff "Passi") began working for Illinois Bell on or about October 17, 1988 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhbiit H) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Passi's renewed Consent is attached hereto in Group Exhbiit H - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1391 Abbott Ct Buffalo Grove, IL.

97.     Plaintiff, James Tennessen (Plaintiff "Tennessen") began working for Illinois Bell on or about March 21, 1988 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhbiit H) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Tennessen's renewed Consent is attached hereto in Group Exhbiit H - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 4 Garage(s), including 1391 Abbott Ct Buffalo Grove, IL, 301 W Oakton St Des Plaines, IL,  360 King St Elk Grove Vlg, IL, and 4638 Century Ct Mchenry, IL.

98.     Plaintiff, Lee Faber (Plaintiff "Faber") began working for Illinois Bell on or about March 14, 1988 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhbiit H) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Faber's renewed Consent is attached hereto in Group Exhbiit H - 1. At times relevant to this lawsuit Plaintiff has been an employee of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1391 Abbott Ct Buffalo Grove, IL.

### Garage - 101 Hart Rd Barrington, IL

99.    Plaintiff, Richard Wood (Plaintiff "Wood") began working for Illinois Bell on or about July 16, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit I) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Wood's renewed Consent is attached hereto in Group Exhibit I - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 101 Hart Rd Barrington, IL, and 1725 Winnetka Ave Northfield, IL.

100.    Plaintiff, Thomas Morton (Plaintiff "Morton") began working for Illinois Bell on or about July 09, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit I) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Morton's renewed Consent is attached hereto in Group Exhibit I - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 101 Hart Rd Barrington, IL, and 565 Rock Road Dr East Dundee, IL.

### Garage - 300 Gougar Rd New Lenox, IL

101.    Plaintiff, Joseph Honkisz (Plaintiff "Honkisz") began working for Illinois Bell on or about July 16, 1979 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit J) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Honkisz's renewed Consent is attached hereto in Group Exhibit J - 1. At times relevant to this lawsuit Plaintiff has been an employee  of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 300 Gougar Rd New Lenox, IL.

102.    Plaintiff, Nicholas  Vulgaris (Plaintiff "Vulgaris") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit J) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Vulgaris's renewed Consent is attached hereto in Group Exhibit J - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 300 Gougar Rd New Lenox, IL.

### Garage - 1 S Pulaski Rd Alsip, IL

103.    Plaintiff, Byron Etapa (Plaintiff "Etapa") began working for Illinois Bell on or about May 19, 1969 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Exhibit K) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Etapa's renewed Consent is attached hereto in Exhibit K - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 12601 S Pulaski Rd Alsip, IL.

### Garage - 9211 Gage Ave Franklin Park, IL

104.    Plaintiff, Gilberto Olivarez (Plaintiff "Olivarez") began working for Illinois Bell on or about October 30, 1978 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit L) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Olivarez's renewed Consent is attached hereto in Group Exhibit L - 1. At times relevant to this lawsuit Plaintiff has been an

employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 9211 Gage Ave Franklin Park, IL.

105.    Plaintiff, Julio Inostroza (Plaintiff "Inostroza") began working for Illinois Bell on or about August 20, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit L) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Inostroza's renewed Consent is attached hereto in Group Exhibit L - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 40 S Mitchell Ct Addison, IL, and 9211 Gage Ave Franklin Park, IL.

106.    Plaintiff, Victor Ballard (Plaintiff "Ballard") began working for Illinois Bell on or about September 04, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit L) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Ballard's renewed Consent is attached hereto in Group Exhibit L - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 4050 Ryan Rd Gurnee, IL, and 9211 Gage Ave Franklin Park, IL.

**Garage - 40 S Mitchell Ct Addison, IL**

107.    Plaintiff, David Hilliard (Plaintiff "Hilliard") began working for Illinois Bell on or about March 12, 1990 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit M) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Hilliard's renewed Consent is attached hereto in Group Exhibit M - 1. At times relevant to this lawsuit Plaintiff has been an employee of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 40 S Mitchell Ct Addison, IL.

108. Plaintiff, Michael Lamb (Plaintiff "Lamb") began working for Illinois Bell on or about February 22, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit M) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Lamb's renewed Consent is attached hereto in Group Exhibit M - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 40 S Mitchell Ct Addison, IL.

109. Plaintiff, Peregrino Austria (Plaintiff "Austria") began working for Illinois Bell on or about July 16, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit M) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Austria's renewed Consent is attached hereto in Group Exhibit M - 1. At times relevant to this lawsuit Plaintiff has been an employee of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 40 S Mitchell Ct Addison, IL.

**Garage - 1325 South St Elgin, IL**

110. Plaintiff, Daryl Adkins (Plaintiff "Adkins") began working for Illinois Bell on or about March 12, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit N) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Adkins's renewed Consent is attached hereto in Group Exhibit N - 1. At times relevant to this lawsuit Plaintiff has been an employee of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 1325 South St Elgin, IL, and 301 W Oakton St Des Plaines, IL.

111.    Plaintiff, Theodous Hutcherson (Plaintiff "Hutcherson") began working for Illinois Bell on or about February 18, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit N) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Hutcherson's renewed Consent is attached hereto in Group Exhibit N - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1325 South St Elgin, IL.

112.    Plaintiff, Stephan DallaValle (Plaintiff "Dallavalle") began working for Illinois Bell on or about December 26, 1978 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit N) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Dallavalle's renewed Consent is attached hereto in Group Exhibit N - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1325 South St Elgin, IL.

**Garage - 301 W Oakton St Des Plaines, IL**

113.    Plaintiff, Jeffrey Palenske (Plaintiff "Palenske") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit O) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Palenske's renewed Consent is attached hereto in Group Exhibit O - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that

term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 301 W Oakton St Des Plaines, IL, and 5555 N Wolcott Ave Chicago, IL.

114.    Plaintiff, Stephen Mueller (Plaintiff "Mueller") began working for Illinois Bell on or about October 27, 1978 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit O) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Mueller's renewed Consent is attached hereto in Group Exhibit O - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 301 W Oakton St Des Plaines, IL.

**Garage - 7225 W 59Th St Summit, IL**

115.    Plaintiff, Donald Sikorski (Plaintiff "Sikorski") began working for Illinois Bell on or about October 04, 1973 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit P) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Sikorski's renewed Consent is attached hereto in Group Exhibit P - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 200 W 63rd St Westmont, IL, and 7225 W 59th St Summit, IL.

116.    Plaintiff, Ignacio Gallegos (Plaintiff "Gallegos") began working for Illinois Bell on or about June 05, 1978 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit P) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Gallegos's renewed Consent is attached hereto in Group Exhibit P - 1. At times relevant to this lawsuit Plaintiff has been an employee  of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 7225 W 59th St Summit, IL.

117.     Plaintiff, Keith Darnell (Plaintiff "Darnell") began working for Illinois Bell on or about September 07, 1993 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit P) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Darnell's renewed Consent is attached hereto in Group Exhibit P - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 7225 W 59th St Summit, IL.

**Garage - 1999 Aucutt Rd Montgomery, IL**

118.     Plaintiff, Bryan Rada (Plaintiff "Rada") began working for Illinois Bell on or about August 27, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit Q) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Rada's renewed Consent is attached hereto in Group Exhibit Q - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1999 Aucutt Rd Montgomery, IL.

119.     Plaintiff, John Moersch (Plaintiff "Moersch") began working for Illinois Bell on or about March 26, 1979 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit Q) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Moersch's renewed Consent is attached hereto in Group Exhibit Q - 1. At times relevant to this lawsuit Plaintiff has been an employee  of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1999 Aucutt Rd Montgomery, IL.

120.    Plaintiff, Jason Green (Plaintiff "Green") began working for Illinois Bell on or about September 17, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit Q) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Green's renewed Consent is attached hereto in Group Exhibit Q - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1999 Aucutt Rd Montgomery, IL.

**Garage - 2020 Production Dr Saint Charles, IL**

121.    Plaintiff, Matthew Chapperon (Plaintiff "Chapperon") began  working for Illinois Bell on or about March 12, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Exhibit R) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Chapperon's renewed Consent is attached hereto in Exhibit R - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 2020 Production Dr Saint Charles, IL.

**Garage - 585 Gore Rd Morris, IL**

122.    Plaintiff, Gregg Mccomb (Plaintiff "Mccomb") began working for Illinois Bell on or about May 07, 1979 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit S) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Mccomb's renewed Consent is attached hereto in Group Exhibit S - 1. At times relevant to this lawsuit Plaintiff has been an employee  of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 585 Gore Rd Morris, IL.

123. Plaintiff, Timothy Mcnally (Plaintiff "Mcnally") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit S) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Mcnally's renewed Consent is attached hereto in Group Exhibit S - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 585 Gore Rd Morris, IL.

**Garage - 301 N Arthur Ave Mount Prospect, IL**

124. Plaintiff, Hiram Anderson (Plaintiff "Anderson") began working for Illinois Bell on or about February 04, 2008 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit T) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Anderson's renewed Consent is attached hereto in Group Exhibit T - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 2 Garage(s), including 301 N Arthur Ave Mount Prospect, IL, and 1725 Winnetka Ave Northfield, IL.

125. Plaintiff, Phillip Lyons (Plaintiff "Lyons") began working for Illinois Bell on or about December 17, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit T) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Lyons's renewed Consent is attached hereto in Group Exhibit T - 1. At times relevant to this lawsuit Plaintiff has been an employee  of

Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 301 N Arthur Ave Mount Prospect, IL.

### Garage - 4638 Century Ct Mchenry, IL

126.    Plaintiff, Richard Marsh (Plaintiff "Marsh") began working for Illinois Bell on or about September 29, 1988 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit U) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Marsh's renewed Consent is attached hereto in Group Exhibit U - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 4638 Century Ct Mchenry, IL.

127.    Plaintiff, James Rice (Plaintiff "Rice") began working for Illinois Bell on or about  and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Group Exhibit U) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Rice's renewed Consent is attached hereto in Group Exhibit U - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 4638 Century Ct Mchenry, IL.

### Garage - 150 Park Ave Lake Villa, IL

128.    Plaintiff, Thomas Hucker (Plaintiff "Hucker") began working for Illinois Bell on or about April 04, 1988 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Exhibit V) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Hucker's renewed Consent is attached hereto in Exhibit V - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell

as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 150 Park Ave Lake Villa, IL.

### Garage - 30W 773N Aurora Rd Naperville, IL

129.    Plaintiff, Efran Arvizu (Plaintiff "Arvizu") began working for Illinois Bell on or about February 05, 2001 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Exhibit W) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Arvizu's renewed Consent is attached hereto in Exhibit W - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 30w 773n Aurora Rd Naperville, IL.

### Garage - 111 Devonwood Ave Romeoville, IL

130.    Plaintiff, Frank Vaisvila (Plaintiff "Vaisvilas") began working for Illinois Bell on or about July 12, 1993 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Exhibit X) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Vaisvilas's renewed Consent is attached hereto in Exhibit X - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 111 Devonwood Ave Romeoville, IL.

### Garage - 1050 Hamilton Ave University Park, IL

131.    Plaintiff, Winston Hodges (Plaintiff "Hodges") began working for Illinois Bell on or about October 14, 2007 and, at times between the date three years before he filed his Consent in the *Blakes* Action (attached hereto in Exhibit Y) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Hodges's renewed Consent is attached hereto in Exhibit Y - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell

as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1050 Hamilton Ave University Park, IL.

### Garage - 1215 Karl Ct Wauconda, IL

132.     Plaintiff, John Hough (Plaintiff "Hough") began working for Illinois Bell on or about April 16, 1979 and, at times between the date three years before  filed  Consent in the Blakes Action (attached hereto in Exhibit Z) to the present, worked as a Cable Splicer for Illinois Bell. Plaintiff Hough's renewed Consent is attached hereto in Exhibit Z - 1. At times relevant to this lawsuit Plaintiff has been an employee  of Illinois Bell as that term is defined by 29 U.S.C. § 203(e) and was assigned to at least 1 Garage(s), including 1215 Karl Ct Wauconda, IL.

### III.     JURISDICTION AND VENUE

133.     This Court has jurisdiction over Plaintiffs' claims against Defendant pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §§1331 and 1337.

134.     Venue is proper in this District as the acts giving raise to this cause of action took place in this District and Defendant regularly conducts business in this District.

### IV.     FACTUAL BACKGROUND – COMMON TO ALL PLAINTIFFS

135.     Plaintiffs are current and former employees of Illinois Bell's Construction and Engineering Department ("C&E") whom, Illinois Bell uniformly refers to as "Cable Splicers".

136.     Within Illinois Bell Cable Splicers are separated into three sub-groups: (1) Copper and Fiber Splicers; (2) DAVAR Techs; and (3) members of the Digital Electronics Group or "DEG Techs."

137.     Cable splicers are assigned to crews that consist of the same type of Cable Splicers and are managed by a single 1st Level supervisor.

138.     All of these Cable Splicers are uniformly subject to numerous Illinois Bell policies, including:

a.     Illinois Bell's Management Systems Operations Control ("MSOC") and its predecessors;

b.     Illinois Bell's Non-Management Employee Expectations;

c.     Illinois Bell's Construction Technician Expectations;

d.     Lunch Periods and Breaks policies; and

e.     Illinois Bell's Job Administration Management ("JAM" or "JAMS") system used to record the time working on discrete tasks.[1]

139.     While the particular jobs that are performed by a particular type of Cable Splicer varies, all Cable Splicers must set up their work site, perform the given task(s) within expected time increments, and tear down their respective job sites.

140.     All Cable Splicers are responsible for maintaining equipment at a job site, ensuring that no equipment is stolen or damaged. If a piece of equipment is stolen or damaged, the Cable Splicer is subject to discipline.

141.     All Cable Splicers are responsible for maintaining and monitoring safety at their job sites.

**A.     ALL CABLE SPLICERS ARE SUBJECT TO ILLINOIS BELL'S EFFICIENCY STANDARDS – MSOC AND OHP**

142.     Illinois Bell has always had an objective standard to evaluate how much work a Cable Splicer is accomplishing for the time he is paid.

---

[1] As discussed at length herein, JAMS is designed to capture the specific amount of time a tech spends on particular tasks.  It is not designed to allow the tech to record time he is doing work which is not strictly devoted the particular task described on a blueprint (e.g., loading a truck, travelling).

143.    For a long  time this was done using an Objective Hour Performance ("OHP") standard.

144.    In or around late 2009, Illinois Bell initiated a program called MSOC and in February, 2010 began rolling it out to C&E. All Cable Splicers are subject to MSOC and were subject to OHP before MSOC.

145.    MSOC is a metric that evaluates the efficiency of Cable Splicers, as individuals, within crews (under a single supervisor), within garages and within departments.

146.    MSOC in practice is extremely complicated, but on its face is a simple equation that measures the hours Illinois Bell says it should have taken to complete a task divided by the time the technician says it took him to actually do the task.

147.    MSOC is a patented, proprietary program that is intended to provide tools of behavioral modification by allowing a supervisor to identify areas where a Cable Splicer may be inefficient (i.e., recording too much time to perform a particular task).

148.    Often a 1st level supervisor uses the information from MSOC's metrics to identify Cable Splicers that should be placed on a Performance Improvement Plan. This often leads to a Cable Splicer's work being more scrutinized, and the Cable Splicer being subjected to increased discipline, and constant harassment from supervisors.

149.    MSOC metrics are the driving force between how work is completed, how work is recorded Illinois Bell's the time system, and how a Cable Splicer is evaluated.

150.    MSOC metrics are also used to evaluate 1st level supervisors — in short — the worse a 1st level supervisor's crew is performing the more discipline he is subjected to and the less money he will paid under an incentive payment program and vice versa.

48

151.    The result of the MSOC system is to create an environment of fear for both Cable Splicers and 1st level supervisors that causes the Cable Splicers and the 1st level supervisors to manipulate the time records (which are used to pay Cable Splicers) to maximize the MSOC measures of efficiency.

152.    As a result, Cable Splicers and 1st level supervisors are working together to under report hours worked — thereby forcing off-the-clock work to be performed by Cable Splicers but not paid.

**B.    ALL CABLE SPLICERS ARE SUBJECT TO THE SAME EXPECTATIONS AND MEAL BREAK POLICIES**

153.    Illinois Bell has developed two job expectation policies regarding meal periods that apply to all Cable Splicers in C&E.

154.     These polices arise out of the Non-Management Expectation handbook and the Construction Technician Expectations handbook and are uniform throughout the C&E.

155.    These policies specifically provide that when a Cable Splicer is working underground (1) he may not tear down that location to travel for lunch; (2) that no underground location can be left unattended; and (3) Cable Splicers are expected to bring their lunch  with them to the work location and eat it there.

**C.    ALL CABLE SPLICERS ARE SUBJECT TO THE SAME ROUTE POLICIES**

156.    Illinois Bell has a uniform policy requiring its Cable Splicers to be en route from their assigned garage to their first job within a specified period of time and not to return to the garage more than 20 minutes before their scheduled end-of-shift.

157.    Cable Splicers are then expected to use this last 20 minutes to complete numerous post-shift activities that include, but are not limited to, recording task time, cleaning and restocking their trucks and ordering supplies.

### D.     ALL CABLE SPLICERS MUST RECORD TIME USING JAMS

158.    Illinois Bell does not require Cable Splicers to record the time that they "work", as that term is defined by the FLSA, but rather the time spent performing particular discrete tasks. Prior to December, 2009, Cable Splicers did this by completing a paper time sheet. After December, 2009, Cable Splicers were expected to record this time in a computer system.

159.    At all times, however, this information was input into  Illinois Bell's JAM system.[2]

a.     The JAM system collects information, including the following:

b.     The name of the technician;

c.     The work date;

d.     Technician remarks and Management remarks;

e.     A section for extra pay, time off, overtime, and meal period allowances;

f.     A breakdown of time spent on a project doing a descrete task on a shown on a blueprint associated with that project.

g.     Whether a particular task is "Complete".

160.    The result of this JAM system is that Illinois Bell is measuring time worked by task, blueprint and project number, as opposed to a traditional clock-in/clock-out system

161.    This discrete task-by-task allocation, stated in tenths of an hour spent is used by Illinois Bell in the MSOC  evaluation.

---

[2] Prior to December, 2009 the paper timesheets were faxed to an office where the data was input into the JAM system another Illinois Bell employee.

162.    This discrete allocation of time assigned for each descrete task is also used by Illinois Bell to pay its Cable Splicers for time worked.

**V.      FACTS SPECIFIC TO PARTICULAR TYPES OF CABLE SPLICERS**

       **E.      FACTS COMMON TO COPPER AND FIBER CABLE SPLICERS**

163.    Copper and Fiber splicers are typically working with cable (either copper or fiber) and perform work in manholes, in the air on poles, or with cable that is buried underground.

164.    That work includes toning, tagging, splicing, trimming and counting cable.

165.    For work that is performed in a manhole, each manhole must be set up in the same way. That setup includes the following work (at each manhole) at a minimum:

      a.      Park the company vehicle;

      b.      Place safety cones outside the company vehicle;

      c.      Get out the manhole guard;

      d.      Prepare the crown (to take off the lid);

      e.      Setup the manhole guard;

      f.      Set up a blower and heater (if it is cold outside);

      g.      Purge the manhole of water and air;

      h.      Perform a gas test on the manhole (that runs throughout the day);

      i.      Add pressure to the cable lines to ensure there is no disruption in the signal;

      j.      Put on the appropriate personal protective equipment and then go into the manhole.

      k.      The teardown of a manhole is the same, but in the reverse.

166.    Cable splicers typically have with them the same or similar equipment, which includes the following:

        a.      a manguard;

        b.      gas analyzer;

        c.      blower;

        d.      heater;

        e.      continuous gas monitor;

        f.      buffering tubes;

        g.      various air tools;

        h.      air hose and other equipment; drills;

        i.      reels;

        j.      propane gas; and

        k.      splice casings.

**F.    FACTS COMMON TO ALL DAVAR CABLE SPLICERS**

167.    A DAVAR tech is responsible for verifying the integrety of the cable pairs and testing the quality of those pairs.

168.    Part of that verification is to update the records regarding which pairs are where within the network. To test the pair to update the records the tech runs a test by connecting it to a computer. Typically there are two tests running at one time, so that while one pair is being tested the tech is connecting the next pair to be tested. This can be performed by a single DAVAR splicer.

169.    Once the records have been updated, and the pairs that fail have been identified, the DAVAR tech will run a more complete test on the failed pairs. This test

requires two techs, one sitting at the "cross box" running the test on the computer, and the other at the terminal where the cable is connected.

170.    To perform the test the DAVAR splicer at the terminal has to disconnect the cable from the "house", while the DAVAR splicer at the cross box runs the test. Often a DAVAR splicer at a cross box is working with more than one other DAVAR splicer who is disconnecting the cable at the terminal.

171.    DAVAR splicers carry with them very expensive equipment which may include, up to two computers and testing equipment. Illinois Bell holds each tech responsible for guarding this equipment from damage or theft.

**G.    FACTS COMMON TO ALL DEG CABLE SPLICERS**

172.    A DEG[3] tech installs, maintains, turns-up, and troubleshoots the end-user equipment that provides the service to Illinois Bell's customers.

173.    One of the primary jobs of a DEG splicer is to provide general maintenance to the systems that have already been installed. This requires monitoring the backup battery systems, cleaning out the fan filters, cleaning the system, and ensuring everything is working properly

174.    All DEG splicers are expected to install equipment in the exact same way to ensure that anyone DEG splicer at a given job will know how it has been installed and can maintain it at a later date.

175.    Often DEG splicers perform their work inside large office buildings which requires them to go through security, and then go to the specific location where the

---

[3] A number of DEG techs were called FWGs before they were merged with the DEG techs. FWGs installed the equipment, while DEG maintained the equipment.  Now, the entire DEG sub group installs and maintains the equipment.

telecommunications equipment is located (frequently in the basement or other remote location).

176.    DEG techs work with a computer assigned to them personally, which allows them to check on equipment needs of customers within Illinois Bell's network, complete paperwork, and complete time sheets in the JAMs system.

## VI.    **FACTUAL BACKGROUND – THE TYPE OF OFF-THE-CLOCK TIME WORKED BY THE PLAINTIFFS**

177.    The policies of Illinois Bell have forced off-the-clock work being performed in four discrete areas:

a.    time spent recording into the JAMs system time worked (irrespective of whether this is pre- or post-shift);[4]

b.    time spent doing work during lunch that is automatically excluded from time paid;

c.    time spent working before a scheduled shift begins; and

d.    time spent working after a scheduled shift ends.

### H.    OFF-THE-CLOCK WORK PERFORMED TO RECORD TIME INTO JAMS

178.    Splicers are expected to record their time at the end of their shift when they return to the garage each day.

179.    This expectation has to be balanced with the Illinois Bell's policy which mandates that an employee not to return to the garage more than 20 minutes before the end of his scheduled shift, which often does not allow enough time to complete all the end-of-day tasks the splicers must complete.

---

[4] The post-shift time spent recording time worked into the JAMs system is the claim that Judge Kim certified on a collective basis.

180.    This problem was compounded by Illinois Bell's failure to provide an adequate number of computers to input time.

181.    1st level supervisors specifically directed Cable Splicers to record time, but not seek to be paid for it from Illinois Bell.

182.    As a result of these polices, Cable Splicers performed work, but were not paid for it by Illinois Bell.

**I.    OFF-THE-CLOCK WORK DURING LUNCH**

183.    Illinois Bell has numerous policies that cause Cable Splicers to perform work during lunch, including its manhole policies, its requirement that splicers maintain security of their equipment, and job expectations to complete a certain amount of work in a specified amount of time.

184.    Cable Splicers perform the following work, but are often not paid for it because of Illinois Bell's policies

a.    Remain on the job site while eating to make sure no equipment is stolen

b.    Remain on the job site while eating to maintain safety

c.    Remain on the job site while eating to watch a manhole

d.    Remain on the job site while eating to monitor equipment conducting tests

e.    Eat while driving from job site to job site;

f.    Work through their lunch breaks meet the time allotted for the job by JAM and MSOC;

g.    Work through their lunch breaks to meet efficiency expectations;

55

      h.     Remain on the job site while eating because it was not possible to break down and reset the job site to eat.

### 1. Work at a Manhole

185.    Because Illinois Bell's policies require that a manhole not be left unattended, Cable Splicers are often required to not take a lunch at all, or to eat lunch while watching the manhole to ensure safety.

186.    As a result, while Cable Splicers often work during lunch and/or do not take a bona fide meal period, they are not paid for it because

      a.     Cable Splicers want to maximize their apparent efficiency;

      b.     1st level supervisors will not let them record time to maximize the 1st level's own productivity;

      c.     1st level supervisors have told Cable Splicers not to record working through lunch;

      d.     1st level supervisors will not approve a Cable Splicer to being paid during lunch, but expect the work to be done in the allotted time.

187.    As a result of these polices, Cable Splicers performed work, but were not paid for it by Illinois Bell.

### 2. Security of Equipment

188.    Illinois Bell requires Cable Splicers to maintain security at the job site, including protecting the expensive equipment they must bring with them to their job site.

189.    Failure to abide by these polices subjects a Cable Splicer to discipline.

190. Equipment must be secured at all times, including during a "lunch break." (I.e. if a piece of equipment is stolen while a Cable Splicer is on "lunch" he or she will be disciplined for it even though was not "working" according to Illinois Bell).

191. As a result of this policy, Cable Splicers performed work protecting equipment (much like a security guard) during a "lunch break" and were not paid for it.

### 3.      MSOC

192. All splicers were subject to MSOC/Efficiency standards that created unrealistic expectations of the amount of time to be spent completing discrete tasks.

193. As a result of these expectations, employees worked through their "lunch period" to improve the amount of work completed, but did not record the time worked.

194. Often this manipulation of the amount of time recorded for a task was done with the approval of a 1st level supervisor and at his specific direction.

195. 1st level supervisors directed Cable Splicers to not accurately record time worked on a task.

196. As a result of this policy, Cable Splicers performed working during lunch, but were not paid for it.

### J.      OFF-THE-CLOCK WORK BEFORE THE SHIFT BEGINS

197. Cable Splicers were expected to be out of the garage and en route to a job as soon as practicable, often within 15 minutes of a shift starting.

198. However, before leaving for the job technicians were expected each day to participate in the tailgate meeting, review the blueprints for their job assignments and get all the materials they needed for the job.

199. To realistically meet these expectations and avoid discipline, employees had to stock their trucks, review blueprints, discuss jobs with supervisors, and perform other work related activities before 7:00 a.m. (i.e., their scheduled shift start time).

200. The type of work that was performed before a shift began includes, but is not limited to:

> a. Clean the truck;
>
> b. Check for supplies;
>
> c. Order supplies;
>
> d. Review a blueprint;
>
> e. Review a job;
>
> f. Talk with a supervisor about the work to be done;
>
> g. Talk with other Cable Splicers about the work to be done;
>
> h. Complete a prior day's timesheet;
>
> i. Check email;
>
> j. Turn on a computer.

201. 1st level supervisors told Cable Splicers that some or all of these activities had to be completed before the shift started but the time would not be recorded or paid.

**K.      OFF-THE-CLOCK WORK AFTER THE SHIFT ENDS**

202. Cable splicers were also expected not to return to the garage before a set time (to maximize the amount of time actually working in the field). However, there was additional work that had to be completed after they returned to the garage but could not be completed before the scheduled end-of-shift, and hence was not paid.

203.    The type of work a Cable Splicer performed after a shift ended (often after completing his or her time sheet and not recorded to paid) included, but was not limited to:

      a.    Clean the truck;

      b.    Check for supplies;

      c.    Order Supplies;

      d.    Review a blueprint;

      e.    Review a job;

      f.    Talk with your supervisor about work;

      g.    Talk with other Cable Splicers about work;

      h.    Complete paperwork;

      i.    Check email.

204.    As a result of this policy, Cable Splicers performed work at the end of the shift, but were not paid for it.

**VII.    ILLINOIS BELL HAD KNOWLEDGE THAT THIS WORK WAS BEING PERFORMED BUT NOT PAID**

205.    Illinois Bell knew this off-the-clock was happening because:

      a.    Cable Splicers complained about doing work and not being paid;

      b.    Cable Splicers complained about not being able to meet MSOC expectations, but they were still "making numbers";

      c.    Supervisors saw Cable Splicers performing work before their shifts, including discussing specific jobs with supervisors themselves;

      d.    Supervisors saw Cable Splicers performing work after their shifts, including discussing specific jobs with supervisors themselves;

e.     Supervisors often visited job sites during lunch while Cable Splicers were eating on the job;

f.     Supervisors that were once Cable Splicers themselves know that this is what is done in the field;

g.     Supervisors told Cable Splicers that they could not get paid for overtime;

h.     Supervisors knew that the only time that Cable Splicers could make phone calls necessitated by the job was during "lunch";

i.     Supervisors knew that whenever a splicer worked at a manhole he could not leave it unmanned to take a non-working lunch;

j.     Supervisors knew that it was impossible for Cable Splicers to breakdown a work site, take lunch and then reestablish the work site;

k.     Supervisors were directing Cable Splicers to underreport time.

206.   On information and belief, the practices of requiring Cable Splicers to report time worked on various tasks as less than the amount of time required to accomplish those tasks was part of a deliberate policy of Illinois Bell management to underpay Cable Splicers.

207.   On information and belief, the method of computing compensation for 1st and 2nd level supervisors was part of a deliberate policy of Illinois Bell management to induce those supervisors to force Cable Splicers to underreport time so that Illinois Bell could under pay those Cable Splicers.

**COUNT I**
**DEMAND FOR RELIEF FOR VIOLATION OF**
**THE FAIR LABOR STANDARDS ACT**
**FOR FAILURE TO PAY OVERTIME WAGES**

208.    Plaintiffs restate and re-allege paragraphs 1 through 207 as paragraph 208 of this Count I.

209.    Under the FLSA, 29 U.S.C. §207, Defendant was and remains obligated to compensate Plaintiffs time and one half for all hours worked in excess of forty in any given week.

210.    Plaintiffs were regularly permitted, encouraged, and/or required to work in excess of forty hours per week but were not paid for such overtime work.

211.    By failing to pay overtime compensation due to Plaintiffs, Defendant willfully, knowingly, and/or recklessly violated the FLSA which requires overtime compensation to be paid to non-exempt employees.

212.    As a result of Defendant's policy and practice of not paying for this work, Plaintiffs have been damaged in that they have not received wages due to them pursuant to the FLSA.

213.    Defendant has made it difficult to account with precision for the unpaid overtime worked by Plaintiffs during the liability period because they did not make, keep, and preserve records of all the hours worked by such employees as required for non-exempt employees pursuant to 29 U.S.C. §211(c).

WHEREFORE, Plaintiffs ANTONIO TINOCO, BRUCE M. TODD, BYRON YOUNG, CHARLES SCOTT, CHRISTOPHER KIRKLAND, DANIEL HARDY, DARRELL HUDSON, ELON LARKIN, JAMES MILLER, JEROME BROWN, JESSE LOVE, JOSEPH DUTTON, KARDELL PERRY, KEITH JOHNSON, KEITH JONES, KEVIN JOHNSON, MARCUS CONNER, MELANIE GRAHAM, MELVIN GARDNER, MICHAEL EDWARDS, MICHAEL PERKINS, MIKE SCHMELTER, NATHANIEL THOMPSON, RAYMOND JACKSON, ROBERT HOUSE JR, RONALD

MALKOWSKI, THEODORE OLIVER, TIMOTHY MUHAMMAD, TONY WRIGHT, TORNELL WILLIAMS, YOVEL SULLIVAN, MICHAEL CRAWFORD, BENNY ALPHONSE, ANTHONY ARRINGTON, ANTHONY CARTER, COREY WEATHERSBY, DANIEL GALLEGOS, DAVID MCKEY, EMANUEL TRIPOLITAKIS, LORENZO WIGGINS, MATTIE LACY, NOE CASTANEDA, RAFAEL ESPARZA, JR., RICHARD VILLARREAL, ROBERT LATHAM, ANDRENZ PAWINSKI, FREDERICK MACKEY, JEFFREY VAUGHN, KERNELL MASSEY, LEE TAYLOR, REYMUNDO HERRERA, RICHARD ECHAVARRIA, RONALD KELM, SERGIO RIVERA, TONYA LAYE, ISAAC BRADFORD, PARRIS JONES, ALBERT SANCHEZ JR., ANTHONY PORTO, DWIGHT CHARLES JR, GREGORY O'CONNOR, HAROLD LOFTON, JAMES TAYLOR, MANUEL A. HERNANDEZ JR., RODNEY AUSTIN, THEODORE STRUCINSKI, KEITH SMITH, BRUCE BLANCHETTE, EARNEST MAYFIELD, KEITH REED, KIRK PARRO, VIRGIL GREEN, ADAM PAVUR, CHARLES PHILLIPS, IAN NIEMIEC, JEFF KEEN, JOE BOWEN, LARRY CECHOWSKI, JOSE F AMEZOL, ALVIN THOMPSON, BRIAN KUBE, DAVID HOWARD, DAVID MASINO, EDREICK JUSTICE, HAROLD SLAYTON, MICHAEL BOROWIEC, TIMOTHY LEO, ADAM EAKINS, BRIAN ERICSON, ROBERT BALMES, ROBERT PASSI, JAMES TENNESSEN, LEE FABER, RICHARD WOOD, JOSEPH HONKISZ, NICHOLAS VULGARIS, BYRON ETAPA, GILBERTO OLIVAREZ, JULIO INOSTROZA, VICTOR BALLARD, DAVID HILLIARD, MICHAEL LAMB, PEREGRINO AUSTRIA, DARYL ADKINS, THEODOUS HUTCHERSON, STEPHAN DALLAVALLE, JEFFREY PALENSKE, STEPHEN MUELLER, DONALD SIKORSKI, IGNACIO GALLEGOS, KEITH DARNELL, BRYAN RADA, JOHN MOERSCH, JASON GREEN, MATTHEW CHAPPERON, GREGG MCCOMB, TIMOTHY MCNALLY, HIRAM ANDERSON, PHILLIP LYONS, RICHARD MARSH, JAMES RICE, THOMAS HUCKER, EFRAN ARVIZU, FRANK VAISVILA, CURTIS TURNER, JOHN HOUGH, THOMAS MORTON, AND WINSTON HODGES, respectfully request the following:

a.     A declaratory judgment that Defendant has violated the overtime provisions of the FLSA, 29 U.S.C. §207;

b.     A declaratory judgment that Defendant's violations of the FLSA were willful;

c.     An award to Plaintiffs of damages in the amount of unpaid overtime compensation to be proven at trial;

d.     An award to Plaintiffs of liquidated damages in an amount equal to the overtime compensation shown to be owed to them pursuant to 29 U.S.C. §216(b);

e.     An award to Plaintiffs of reasonable attorney's fees and costs, pursuant to 29 U.S.C. §216(b); and

f.     An award of such other and further relief as this Court deems just and equitable

Respectfully Submitted,

By:/s/ Walker R. Lawrence

Walker R. Lawrence
Attorney No. 6296405
Maduff & Maduff, LLC
Michigan Plaza At Illinois Center
205 N. Michigan Ave
Suite 2050
Phone: 312-276-9000
abmmaduff@madufflaw.com
mlmaduff@madufflaw.com
wrlawrence@madufflaw.com