**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DARYL ADKINS, *et al.*,

                Plaintiffs,

      v.

ILLINOIS BELL TELEPHONE COMPANY
d/b/a AT&T Illinois,

                Defendant.

Case No. 14-cv-1456

Hon. Judge Castillo

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS FOR MISJOINDER AND TO REQUIRE INDIVIDUAL SUITS**

## I.    <u>INTRODUCTION</u>

Plaintiffs' 178-page, 1,318-paragraph Second Amended Complaint ("SAC") amalgamates the disparate claims of 89 current and former Illinois Bell Cable Splicers into one unwieldy proceeding.  Dkt. 108.  Broken into 128 separate "counts," the SAC alleges Illinois Bell violated the FLSA by failing to pay sufficient overtime compensation for work that may have occurred – depending on the individual – pre-shift, post-shift or during lunch breaks.[1]  Not only does the SAC allege a wide variety of off-the-clock work, but that it occurred for a host of different reasons, such as to meet performance metrics, maintain a worksite's security, or conform to a daily schedule.  The SAC covers plaintiffs who have worked multiple types of jobs, over different time periods, involving at least 48 locations, and implicating over 160 supervisors.

On its face, the SAC improperly joins plaintiffs' varying claims into one lawsuit.  Here, however, another court in this district *already* found that these exact types of allegations should not be litigated collectively.  *Blakes v. Ill. Bell Tele. Co.*, No. 11-cv-336, 2013 WL 6662831 (N.D. Ill. Dec. 17, 2013).  Each plaintiff here "opted in" to the conditionally certified (and now partially decertified) collective action in *Blakes* and is represented there by the same counsel who filed this action.  Based on an extensive record, Magistrate Judge Kim found the claims plaintiffs now repackage here to be too diverse, individualized, and fact-specific to be litigated collectively under FLSA § 216(b).  Rather than file individual suits, plaintiffs thumbed their nose at Judge Kim's order by admittedly recycling "those claims that were not certified to go forward on a collective basis in" *Blakes* (Dkt. 8 ¶ 3) into a 141-plaintiff (now 89-plaintiff) morass before a new judge.  The Court should reject this obvious end-around the *Blakes* decertification decision, as it precludes any joinder here under collateral estoppel principles.

---

[1] Forty-four plaintiffs also bring claims under the Illinois Minimum Wage Law ("IMWL").

1

The SAC itself shows that joining these 89 individuals in one lawsuit is no more appropriate here than it was in *Blakes*. Plaintiffs' diverse claims do not arise out of a single transaction, occurrence, or series of transactions or occurrences, nor have plaintiffs raised any question of law or fact that is common to *all* plaintiffs. *See* Fed. R. Civ. P. 20(a)(1). To the contrary, resolving plaintiffs' claims would require inherently individualized inquiries impossible to resolve efficiently using whatever common evidence plaintiffs believe exists. Indeed, the sheer number of plaintiffs alone establishes that joinder would be unworkable and undermine Rule 20's purpose of promoting judicial economy and efficiency.

Allowing joinder here would not only affect trial, as discovery would also be unnecessarily confusing and cumbersome. On top of individualized discovery for every plaintiff, there are now five law firms, each representing *different* plaintiffs having individual interests and claims. There is no obvious rhyme or reason to this allocation of plaintiffs among the various counsel. Even the plaintiffs represented by the same counsel do not belong in one case, much less with other plaintiffs who have other attorneys. For example, the parties would need to contend with multiple attorneys taking potentially conflicting positions on discovery issues, prepare multiple protective orders to protect different plaintiffs' privacy interests, and confront needless complications in otherwise routine scheduling matters. The Court should address these issues now rather than after years of wasteful litigation that is unnecessarily complicated by the aggregation of these disparate claims into one proceeding.

Accordingly, Illinois Bell requests the Court find plaintiffs' claims were misjoined, sever each plaintiff, retain jurisdiction over plaintiff Daryl Adkins only and require him to file an amended complaint, if he so chooses (such that only one plaintiff remains before this Court), and

dismiss the remaining plaintiffs without prejudice to re-filing individual suits with the requisite filing fees (meaning new cases assigned pursuant to the district's normal procedures).

## II.    BACKGROUND

On January 17, 2011, seven plaintiffs filed an FLSA Section 216(b) putative collective action alleging unpaid overtime wages, namely, that maintaining safety and security at job sites and/or traveling among job sites caused them to work through lunches, and they completed timesheets post-shift on garage computers without pay.[2]  *Blakes*, Dkt. 11 ¶¶ 17-30.  On June 15, 2011, Judge Kim granted conditional certification under the "modest" first-stage standard.  2011 WL 2446598, at *3-4 (N.D. Ill. June 15, 2011).   Thereafter, 346 current and former Cable Splicers opted into *Blakes*.  2013 WL 6662831, at *2.

After extensive discovery, including depositions of 18 opt-in plaintiffs (11 of whom were original plaintiffs here, 9 of whom remain), as well as production of various timekeeping and other data, Illinois Bell moved to decertify the collective action.  Illinois Bell highlighted variations in plaintiffs' experiences by job, location, supervisor, and other factors; argued its defenses are individualized; and maintained that individualized issues would overwhelm any collective trial.  *Blakes*, Dkt. 208-2.  Plaintiffs responded by invoking not only the theories upon which they moved for conditional certification – lunch break work due to maintaining job sites or inter-site travel, and post-shift electronic time entry – but *additionally* that Illinois Bell's alleged efficiency objectives, timekeeping practices, and rules about when technicians must leave and return to the garage compelled off-the-clock work.  *See* 2013 WL 6662831, at *5, 8-9.

On December 17, 2013, Judge Kim decertified the collective action on all but plaintiffs' post-shift, timesheet-entry claim.  The court recognized that plaintiffs' "efficiency" theory was

---

[2] Plaintiffs filed an amendment complaint on February 9, 2011.  *Blakes*, Dkt. 11.  Moreover, plaintiffs had alleged but then voluntarily dismissed IMWL claims.  *Blakes*, Dkt. 60.

3

raised improperly ("plaintiffs should not be allowed to avoid decertification based on a theory they never asked the court to conditionally certify"), but went on to reject this theory as grounds for avoiding decertification.[3] *Id.*, at *8-16. Judge Kim thus determined that the same theories plaintiffs now raise here "would be impossible to resolve" collectively, that plaintiffs' claims were not based on "an illegal common policy," and joint resolution would only result "in an overwhelming amount of individual inquiries." *Id.* at *10-12. The *Blakes* court also rejected joint treatment using subclasses of the same three employee groups described in the SAC here: "(1) Copper and Fiber Splicers; (2) DAVAR Techs; and (3) members of the Digital Electronics Group or 'DEG Techs'" (Dkt. 108 ¶ 10). *Id.* at *17. Judge Kim was unequivocal: "there is *no gain* to be derived from the collective approach." *Id.* at 18 (emphasis added).[4]

On February 28, 2014, when Judge Kim's decertification decision took effect (*Blakes*, Dkt. 239), the same plaintiffs' counsel filed this lawsuit on behalf of 141 *Blakes* opt-ins, and then amended the complaint on March 5.[5] Plaintiffs admit they are bringing "those claims that were not certified to go forward on a collective basis in" *Blakes*, and acknowledge that the *Blakes* order allowed them "to file *individual claims* such as those raised here." Dkt. 1 ¶ 3; Dkt. 8 ¶ 3 (emphasis added). But the only plaintiff-specific allegations in their amended complaint were that each individual "worked as a Cable Splicer for Illinois Bell" and "was assigned to at least" certain garages during their employment. *Id.* ¶¶ 6-146. Plaintiffs then recited generic allegations about Illinois Bell, mirroring the theories the *Blakes* court rejected in its decertification decision,

---

[3] Because these theories were never alleged or conditionally certified in *Blakes*, the limitations period on certain claims raised again here was not tolled, and many claims are now time-barred, adding yet another level of individualized inquiry pertaining to each plaintiff's claims.

[4] Even though *Blakes* certified the timesheet-entry claim to proceed collectively, plaintiffs reassert the same claim here. Dkt. 108 ¶¶ 3, 32. Illinois Bell moved for summary judgment on this claim in *Blakes*.

[5] The same counsel filed copycat complaints in other Illinois courts for other *Blakes* opt-ins. *Anderson v. Ill. Bell Tele. Co.*, No. 1:14-cv-4025 (C.D. Ill.) (three plaintiffs); *Denny v. Ill. Bell Tele. Co.*, No. 2:14-cv-2035 (C.D. Ill.) (five plaintiffs); *Ferguson v. Ill. Bell Tele. Co.*, No. 3:14-cv-297 (S.D. Ill.) (one plaintiff).

some of which supposedly applied to all 141 plaintiffs, others pertaining only to certain types of "cable splicers," and still others whose application was unclear. *Id.* ¶¶ 147-221.

Illinois Bell's counsel informed plaintiffs' counsel that, *inter alia*, it viewed this complaint as demonstrably improper and warranting sanctions, and demanded that plaintiffs re-file individual cases as ordered by *Blakes*.[6] Since then, many of the 141 individual plaintiffs have voluntarily dismissed their claims. Of the remainder, 53 are now represented by one of four new law firms, while 36 plaintiffs remain represented by original counsel.

Plaintiffs' SAC hardly cured matters. It repeats the same generalized allegations, followed by myriad allegations specific to each plaintiff about the type of unpaid work, when it was performed, and the supervisors and garages applicable to each.[7] Combined with plaintiffs' decision to split up among five law firms, the SAC has only made it clearer that these individuals do not belong in the same case. Illinois Bell asks the Court to grant the relief requested below.

## III. ARGUMENT

Rule 20(a) allows permissive joinder only if each plaintiff's claim (1) "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences," **and** (2) presents some "question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a). The failure to meet either prong constitutes misjoinder, and Rule 21 authorizes the court to "add or drop a party, or sever any claim against another party." Fed. R. Civ. P. 21.

In addition to these criteria, joinder turns on whether separate actions would avoid prejudice and delay, promote judicial economy, or safeguard principles of fundamental fairness. *See Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001); *Insolia v. Philip Morris, Inc.*,

---

[6] Illinois Bell's counsel made the same points to the new plaintiffs' counsel after they entered appearances. *See* Exhibit B. Concurrently with this Motion, Illinois Bell has served a Rule 11 motion.

[7] To assist the Court in more easily reviewing the numerous variations among the 89 plaintiffs' factual allegations, a summary chart is attached as Exhibit A.

186 F.R.D. 547, 549 (W.D. Wis. 1999) ("The permissive joinder doctrine is animated by several policies, including the promotion of efficiency, convenience, consistency, and fundamental fairness." (citations omitted)).   Courts should consider "the risk of confusion, prejudice, overlapping proof and duplicative testimony" that could result from joint litigation of claims based on "differences between each of the Plaintiffs' situations."  *McDowell v. Morgan Stanley & Co., Inc.*, 645 F. Supp. 2d 690, 696 (N.D. Ill. 2009).

### A.     The *Blakes* Decertification Decision Bars Joinder.

#### 1.     Plaintiffs' Lawsuit Circumvents The Decertification Order.

Judge Kim's ruling in *Blakes* alone is sufficient to warrant severing plaintiffs' claims and ordering them to re-file individually.  Plaintiffs have taken the same claims and theories already deemed unsuitable for collective treatment and effectively "cut and paste" them into a new pleading before a new judge.  The Court should not permit such tactics.

Judge Kim specifically rejected plaintiffs' "efficiency-pressure" theory as a common factor uniting plaintiffs' claims:  "the only way to get to the bottom of whether cable splicers routinely hid their time from their supervisors in an effort to improve their MSOC standing would require hundreds of individualized inquiries into the plaintiffs' particular circumstances." *Blakes*, 2013 WL 6662831, at *12.  Judge Kim also concluded that these deficiencies could not be cured by sub-classes, finding "no way to resolve whether the combination of Illinois Bell's lunch-hour policies and the MSOC efficiency ratings routinely caused copper and fiber splicers to work through lunch or to hide time spent gathering or replenishing materials pre- or post-shift." *Id.* at 17.  The same goes for the alleged requirement to maintain the security of a worksite or travel to and from a job.  *Id.* ("But the same wild variations that characterize the collective of cable splicers as a whole pertain to the sub-class of copper and fiber splicers when it comes to this claim.").  In the end, Judge Kim found "no way to determine from Illinois Bell's

lunch break and equipment security policies whether they forced individuals within these sub-classes to work through lunch or otherwise off the clock without looking at how those policies applied to each individual's circumstances on a given day." *Id.*, at *18.

Plaintiffs are not the first to seek to inappropriately reassemble a decertified collective action through the improper mass joinder of former opt-ins. Other courts have routinely rejected this (mis)joinder strategy. For example, in *Hawkins v. Alorica, Inc.*, the court refused joinder of 12 opt-in plaintiffs after denying FLSA conditional certification and Rule 23 class certification, as it had "already found that" defendant had no common policy or practice of requiring unpaid work and that the "individualized issues discussed in its Order denying conditional and class certification for the pre- and post-shift work class" also made joinder inappropriate. No. 2:11-cv-283, 2012 WL 5364434, at *2-3 (S.D. Ind. Oct. 30, 2012) (citations omitted); *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, at 520-22 (5th Cir. 2010) (affirming misjoinder where court previously decertified FLSA collective action); *cf. Martinez v. Haleas*, No. 07-cv-6112, 2010 WL 1337555, at *3 (N.D. Ill. Mar. 30, 2010) (rejecting joinder where court had denied Rule 23 class certification for lack of a common question, finding the "same logic applies to the instant motion"). This Court likewise should not countenance plaintiffs' defiance of the *Blakes* decertification order by trying to undo this decision via a new case.

## 2.     Plaintiffs' Attempted Joinder Is Barred By Collateral Estoppel.

A finding of misjoinder also is warranted under principles of collateral estoppel (or issue preclusion), which applies when:  (1) the issue sought to be precluded is the same as an issue involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000).  All four criteria are satisfied here.

7

First, the *Blakes* ruling that plaintiffs are not "similarly situated" under the FLSA necessarily resolves the narrower issue here: whether each plaintiff's claims arise from a single transaction, occurrence, or series of transactions. Although the procedural mechanisms differ, courts recognize that "the 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).[8] As plaintiffs could not satisfy the Section 216(b) standard, they necessarily cannot meet Rule 20's joinder requirements. *See, e.g.*, *Faison v. Texas EZPawn, L.P.*, No. 07-cv-067, 2007 WL 1428639, at *1 (S.D. Tex. May 11, 2007) (collateral estoppel precluded Rule 20 joinder after FLSA decertification, as prior judge "clearly already ruled on the commonality factor [under FLSA § 216] using language that is identical to the commonality requirement for Rule 20 joinder, and this Court honors that ruling"); *Yerger v. Liberty Mut. Group, Inc.*, No. 5:11-cv-238, 2012 WL 4423499, at *2 (E.D.N.C. Sept. 24, 2012).

Second, whether factual variations and individualized inquiries inherent in plaintiffs' claims preclude joint litigation was "actually litigated" in *Blakes*. The parties conducted extensive discovery (including approximately 30 depositions), hired multiple experts, and filed hundreds of pages of briefing on decertification – leading to a thorough, 60-page decertification order. To allow permissive joinder here would effectively nullify Judge Kim's decision.

Third, the *Blakes* court's determination that plaintiffs' claims were too diverse was essential to (indeed, dictated) its decertification of the collective. For collateral estoppel

---

[8] *See also, Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007); *Vennet v. Am. Intercontinental Univ. Online*, No. 05-cv-4889, 2005 WL 6215171, at *6 (N.D. Ill. Dec. 22, 2005); *Mahaffey v. Amoco Corp.*, No. 93, cv-4587, 1997 WL 24712, at *1 (N.D. Ill. Jan. 17, 1997) ("To proceed as a representative action under [FLSA § 216(b)], plaintiffs need only show that they are similarly situated, and not that their claims arose out of the same transaction or occurrence as required under Fed. R. Civ. P. 20(a), or that they meet Rule 23(a) class action prerequisites."); *Flavel v. Svedala Indus., Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994).

purposes, this ruling constitutes a "final judgment," as "prior adjudication of an issue in another action that is deemed sufficiently firm to be accorded preclusive effect." *In re Bridgestone/ Firestone, Inc. Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003), *abrogated on other grounds by Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011).

Finally, plaintiffs here were party plaintiffs in *Blakes*, and were represented by the same counsel who initiated this suit on their behalf and represents 36 plaintiffs now. *Cf. Medina v. Happy's Pizza Franchise, LLC*, No. 10-cv-3148, 2012 WL 1094353, at *5 (N.D. Ill. Apr. 2, 2012) ("Every opt-in plaintiff [under the FLSA] is a party to the case."); 29 U.S.C. § 216(b) (one does not become a plaintiff "unless he gives his consent in writing to become such a party and such consent is filed"). Thus, whether all 89 plaintiffs can be part of the same proceeding was resolved in *Blakes*, and they should be barred from re-litigating that issue here.

## B.  Plaintiffs' Claims Do Not Arise Out Of The Same Transaction Or Occurrence.

Even if *Blakes* did not preclude joinder outright, plaintiffs' claims do not arise from "the same transaction, occurrence, or series of transactions or occurrences" under Rule 20(a)(1). "Rule 20(a) seeks to promote judicial economies, a goal that is not served where . . . the incidents underlying the claims are wholly separate, so as to require entirely different proof." *Harris v. Spellman*, 150 F.R.D. 130, 132 (N.D. Ill. 1993). Thus, courts examine whether the alleged conduct occurred at different times, at distinct locations, involving different individuals, or based upon disparate causes. *See, e.g.*, *McDowell*, 645 F. Supp. 2d at 695-96 (misjoinder where each claim "was rooted in an individual decision, made by different supervisors, at different times, and in four different offices"); *Berry v. Ill. Dept. of Human Servs.*, No. 00-cv-5538, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001) (considering the applicable time period and whether acts were related, the type of conduct, and different supervisors, departments, or locations); *Byers v. Ill. State Police*, No. 99-cv-8105, 2000 WL 1808558, at *3-4 (N.D. Ill. Dec. 6, 2000) (same).

9

The SAC makes clear each plaintiff has a different story to tell and that joint litigation would not be practical, efficient, or fair. Plaintiffs represent multiple job types, which they admit require different responsibilities. *See* Dkt. ¶¶ 10-15. Nearly every plaintiff allegedly reported to two or more supervisors during the relevant period, with several having as many as 7 to 9 managers. *See, e.g.*, Dkt. 108 ¶¶ 271, 427. Most plaintiffs also worked out of two or more garages, with some listing as many as five. *See, e.g.*, *id.* ¶¶ 1123, 1159. Plaintiffs assert a hodgepodge of allegedly unpaid tasks occurring at different times throughout a given day. *See* Ex. A. For example, even taking *just the first ten plaintiffs* discussed in the SAC (Counts 1-10), represented by just *one* of the five law firms, one plaintiff "occasionally cleaned out his truck" after a shift, another "discussed jobs with supervisors," still another "occasionally emailed or faxed his supervisors," and several more do not allege unpaid post-shift work at all. *Id.* ¶¶ 50, 76, 106-116; 130-135. Likewise, some of these ten plaintiffs assert unpaid pre-shift activities ranging from "g[etting] supplies from the garage supply room, and look[ing] at jobs on his computer," to "fill[ing] out time-sheets . . . and occasionally talk[ing] with supervisors about jobs," to stocking a truck (but only "if he hadn't done so after his previous shift"), while others do not allege any unpaid pre-shift work. *Id.* ¶¶ 49, 62, 88 129-135.

Plaintiffs' apparent attempt to identify a "common policy" to establish a related "series of transactions" among all plaintiffs cannot salvage joinder. *Blakes* rejected this approach and, regardless, plaintiffs' own allegations demonstrate that each plaintiff *was not* subject to a common policy or practice binding their claims. Plaintiffs and their counsel know well that the circumstances underlying their claims varied over time, and whether each of their generalized allegations applies to a particular plaintiff depends in part upon when that person was employed. Plaintiffs also admit that MSOC, upon which they rely heavily, was not implemented until

February 2010 (*id.* ¶ 35), meaning anyone terminated before then will have a materially different claim than those who were not. The same goes for the JAM timekeeping system, which the SAC admits was not relevant before December 2009. *Id.* at ¶ 37.

Moreover, *even if* plaintiffs had identified a common policy, they do not allege that the theories in the SAC are unlawful or otherwise *caused* each plaintiff's alleged harm. *See, e.g.*, *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 516-17 (N.D. Ill. 2000); *Byers*, 2000 WL 1808558, at *4-5. Instead, plaintiffs point to lawful practices like requiring employees to leave for or return from jobs within specified times, securing a worksite for lunch, and complying with efficiency standards. Putting aside that the merits of even these broad allegations will depend upon the applicable garage, manager, or time period, "the existence of an alleged company-wide policy likely cannot outweigh the numerous other factors that courts consider in this context," including whether each plaintiff's *harm* was a result of *individual* circumstances. *McDowell*, 645 F. Supp. 2d at 695. Of course, this is precisely what *Blakes* held for the same allegedly "common" policies identified here. 2013 WL 6662831, at *12 (finding it "impossible to resolve" on a class basis whether allegedly common policies compelled unpaid work). Resolving each plaintiff's claim would not be any more possible through joinder under Rule 20.[9]

Illinois Bell's defenses also would be highly individualized. Again, the *Blakes* court agreed, noting that determining whether each manager knew about off-the-clock work could not "be resolved without resorting to myriad individual inquiries," each "requir[ing] proof specific to individual supervisors and locations." 2013 WL 6662831, at *14, 15. Illinois Bell also is

---

[9] Other courts to consider joint FLSA claims have reached similar results. *See, e.g.*, *Gregory v. FedEx Ground Pkg. Sys., Inc.*, No. 2:10-cv-630, 2012 WL 2396873, at *10-12 (E.D. Va. May 9, 2012) (denying joinder of 10 plaintiffs' claims despite some commonality where "the factual dissimilarities were myriad"), *report and rec. adopted* 2012 WL 2396861; *Yerger*, 2012 WL 4423499, at *2; *Gatewood v. Koch Foods of Miss., LLC*, No. 3:07-cv-82, 2009 WL 8642001, at *21 (S.D. Miss. Oct. 20, 2009) (severing four named plaintiffs' claims after decertification); *Faison*, 2007 WL 1428639.

entitled to challenge each plaintiff's credibility. *Id.*, at * 15. But what lies in store at any trial is individual testimony from 89 plaintiffs, their multiple individual supervisors, and those who would testify to timekeeping, performance expectations, and other "policies" plaintiffs identify. Even if only two days were allocated to each plaintiff, such a trial would take up the Court's docket – and a jury's time – for upwards of a year. This is wholly unreasonable and impractical.

In sum, each plaintiff has a distinct claim based on varied circumstances that fall short of the "same transaction, occurrence or series of transactions or occurrences" under Rule 20(a)(1).

### C.    There Is No Question Of Law Or Fact Common To All Plaintiffs.

Plaintiffs also cannot show that "any question of law or fact common to *all plaintiffs* will arise in the action." Fed. R. Civ. P. 20(a)(1)(B) (emphasis added). Although Rule 20(a) does not demand that every factual or legal question be common, it does require at least some "common thread" between *each* plaintiff's claims and that defendant's common conduct be the *basis* for each plaintiff's recovery. *See, e.g.*, *Berry*, 2011 WL 111035, at *17 (finding "no common thread connecting all 33 plaintiffs"); *Bailey*, 196 F.R.D. at 516-17 (asking whether common conduct "affected each plaintiff or any causal link between a common and identifiable wrongful act on the part of the defendant and the adverse actions taken with respect to each plaintiff").

The *Blakes* decertification order already outlines numerous reasons why no questions of law or fact are common to each plaintiff. *See supra* § III.A. Although the SAC attempts to identify allegedly common policies, plaintiffs do not allege any were unlawful, that each plaintiff responded to these policies in the same way, or, critically, that each *was even subject to them*. *See supra* at § III.B. The SAC also reveals variation as to whether individual plaintiffs allege *any* pre-shift, lunch break, or post-shift work, and the reasons for allegedly performing any such work vary greatly. *See* Exhibit A (chart of allegations). Without questions of law or fact common to every plaintiff, there is no efficiency to be gained from joint litigation.

### D.  Severance Would Promote Fairness And Judicial Economy.

Even if plaintiffs could satisfy Rule 20(a)(1), "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo*, 600 F.3d at 521 (citations omitted); *see also Chavez*, 251 F.3d at 632 (courts have discretion to consider "other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness" (quotations omitted)).

To start, joinder of more than forty plaintiffs generally is impracticable. *See, e.g.*, *Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 385 (N.D. Ill. 2012); *Chandler v. Sw. Jeep-Eagle*, 162 F.R.D. 302, 307 (N.D. Ill. 1995). Plaintiffs here more than double this number.

Moreover, that five independent law firms now represent different groups of plaintiffs further frustrates Rule 20's goal of judicial economy. Illinois Bell has a right to discovery concerning each plaintiff's allegations, but when five law firms represent different groups of plaintiffs, the parties would have to deal with issues like who may attend, question witnesses, or object at depositions. Privacy interests inherent in documents pertaining to plaintiffs would preclude them from being shared with counsel for *other* plaintiffs, making protective orders and document production more cumbersome and protracted. Or any time Illinois Bell wishes to file a routine motion, consent would be needed from five firms, with the potential for these attorneys to take opposing positions. Simply put, plaintiffs' curious approach of dividing seemingly unrelated claims among multiple firms escalates rather than alleviates efficiency concerns.

Courts also reject joinder where "different witnesses and documentary proof would be required for plaintiffs' claims." *Acevedo*, 600 F.3d at 522 ("The district court was within its wide discretion to conclude that trying these claims together would be too challenging, given the divergent working conditions at each store and the different defenses applicable to each

13

plaintiff's claims."); *see also Gregory*, 2012 WL 2396873, at *12 (noting that "common issues of law pervade Plaintiffs' complaint," but finding misjoinder because "the factual nuances of each plaintiff's claims favor individualized treatment") *McDowell*, 645 F. Supp. 2d at 695.

So too here, the 89 plaintiffs held various positions, worked out of at least 48 garages, and reported to more than 160 different managers. They also cite comments from individual managers as grounds for liability. Proceeding under the SAC would undoubtedly prove impractical, confusing, and violate principles of fundamental fairness concerning Illinois Bell's right to defend against each claim and to a fair trial. *See Chavez*, 251 F.3d at 632. Instead, requiring independent suits "will allow the parties to better articulate their individualized claims and defenses, which will ultimately foster swifter resolution for all involved." *Gregory*, 2012 WL 2396873, at *12-13; *see also Baker v. Amsted Rail Co., Inc.*, No. 12-cv-1245, 2013 WL 361812 (S.D. Ill. Jan. 30, 2013) (declining to consolidate claims the court already had "exhaustively examined and found unsuitable for collective trial"). Thus, under Rule 20(a)(1), and the factors underlying this rule, the Court should reject joinder of Plaintiffs' claims.[10]

## IV.   REQUESTED RELIEF

Under Rule 21, the Court may "add or drop a party" or otherwise impose terms it deems "just." Fed. R. Civ. P. 21. Accordingly, courts often retain the first named plaintiff's claims and dismiss all others without prejudice to re-filing individual actions. *See, e.g.*, *McDowell*, 645 F. Supp. 2d at 696 (after severance, "it is left to those Plaintiffs to file new complaints, which will be assigned new case numbers and will be randomly assigned new judges in accordance with the usual procedures in the courts of proper venue"); *Berry*, 2001 WL 111035, at *18 (same); *DirecTV, Inc. v. Beecher*, 296 F. Supp. 2d 937, 945 (S.D. Ind. 2003) (severing plaintiffs' claims

---

[10] Should the Court decline to sever plaintiffs' claims, Illinois Bell reserves its right to move for separate trials under Fed. R. Civ. P. 42(b) at the appropriate time.

to file "separate actions if it chooses to do so, with new complaints and filing fees"). The Court should dismiss the SAC without prejudice and require each plaintiff to file separate, individual suits. The Court may retain jurisdiction over the first-named plaintiff (Adkins) only and order that he file an amended complaint if he chooses, leaving only a single-plaintiff case.

The Court also should make clear that each new suit must be accompanied by the filing fee that would have been due had suit been properly filed in the first place. This payment is mandated by statute, 28 U.S.C. § 1914(a), and erects "a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits." *In re Diet Drugs*, 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004); *see also In re Seroquel Prods. Liability Litig.*, No. 6:06-md-1769, 2007 WL 737589, at *2-3 (M.D. Fla. Mar. 7, 2007) (denying reduction of filing fees after severance, noting the additional burden on the court and the "gatekeeping feature of a filing fee"). Courts therefore regularly require severed plaintiffs to pay the filing fees in this circumstance.[11] Individual filing fees likewise should be mandated here.

## V. <u>CONCLUSION</u>

For the reasons set forth above, Illinois Bell requests that the Court: (1) grant its Motion; (2) retain jurisdiction of the claims of Daryl Adkins and order an amended complaint within 30 days of the date of the order (if he chooses to do so); and (3) dismiss the remaining plaintiffs' claims without prejudice and order each individual plaintiff to re-file his or her individual complaint (if he chooses to do so), with the applicable filing fee.

---

[11] *See In re Diet Drugs*, 325 F. Supp. 2d at 541-42 (Section 1914(a) should not "bestow a free ride on misjoined or misjoining plaintiffs"); *In re BitTorrent Copyright Infringement Cases*, Nos. 12-1188 *et al.*, 2013 WL 501443, at *6 (C.D. Ill. Feb. 11, 2013); *Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 534 (M.D. Fla. 2012) (plaintiff's "lawsuits have deprived the court of hundreds of thousands of dollars in much needed revenue, while burdening the docket with cases that are difficult to manage . . . without extraordinary judicial time and labor"); *Banks v. County of Allegheny*, Nos. 05-cv-781 *et al.*, 2007 WL 4192199, at *3 (W.D. Pa. Nov. 25, 2007).

Dated:  August 29, 2014

Respectfully submitted,

By:  /s/  Gregory P. Abrams

George A. Stohner (*pro hac vice*)
Gregory P. Abrams
Rita Srivastava
Matthew A. Russell
Morgan, Lewis & Bockius, LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
312.324.1000
gstohner@morganlewis.com
gabrams@morganlewis.com
rsrivastava@morganlewis.com
marussell@morganlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on August 29, 2014, a true and correct copy of the foregoing document was served by electronic means through the Court's ECF system to all counsel of record, namely:

Aaron Maduff                                Brian D. Massatt
Michael Maduff                              Law Office of Brian D. Massatt
Walker Lawrence                             8824 Glenshire Street
Maduff & Maduff LLC                         Tinley Park, Illinois 60487
205 N. Michigan Avenue, Suite 2050          bmassatt@comcast.net
Chicago, IL 60601
ABMaduff@maAdufflaw.com
MLMaduff@maAdufflaw.com
WRLawrence@maAdufflaw.com


Colleen M. McLaughlin                       John Billhorn
Elisa Hobfoll                               Billhorn Law Firm
Law Offices of Colleen M. McLaughlin        120 S. State Street, Suite 400
1751 S. Naperville Rd. Ste 209              Chicago, IL 60603
Wheaton, IL 60189                           jbillhorn@billhornlaw.com
colleen@cmmclaw.com
elissa@cmmclaw.com


Mario Uteras
Uteras Law Offices, Inc.
205 W. Wacker Dr., Suite 1600
Chicago, Illinois 60606
mutreras@utreraslaw.com


                                    /s/  Gregory P. Abrams                  

                                    *Attorney for Defendant*

17