UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARYL ADKINS, *et al.*,[1]<br><br>                    Plaintiffs,<br><br>   v.<br><br>ILLINOIS BELL TELEPHONE COMPANY<br>d/b/a AT&T Illinois,<br><br>                    Defendant. | Case No. 14-cv-1456<br><br>Hon. Judge Castillo<br><br>Magistrate Judge Martin |

**DEFENDANT'S MOTION FOR SANCTIONS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

Defendant Illinois Bell Telephone Company ("Illinois Bell") hereby moves, pursuant to Fed. R. Civ. P. 11, for sanctions against plaintiffs and their counsel, Maduff & Maduff LLC, the Law Offices of Colleen McLaughlin, the Law Offices of John Billhorn, Utreras Law Offices, Inc., and Law Office of Brian D. Massatt.

**SUMMARY OF RELEVANT FACTS**

As detailed in Illinois Bell's Motion to Sever Claims and to Require Individual Suits and supporting brief ("Motion to Sever") (Dkt. 115 and 116), which are incorporated herein by reference, the Maduff firm represents a class of opt-in plaintiffs, which includes each plaintiff in this case, in a collective action pending before another court in this District, styled *Blakes v. Ill. Bell Tele. Co.*, N.D. Ill. Case No. 11-cv-336.

*Blakes* was filed as a putative collective action under FLSA Section 216(b) on January 17, 2011. *Blakes*, Dkt. 1. The *Blakes* court granted plaintiffs' motion for conditional

---

[1] The original first-named plaintiff in this action, Antonio Tinoco, filed a notice of voluntarily dismissal on July 23, 2014 (Dkt. 92), which was granted on July 28, 2014 (Dkt. 101). Accordingly, Illinois Bell has replaced Tinoco in the caption with the first plaintiff in the current operative complaint, Daryl Adkins.

certification on June 15, 2011. *Blakes*, 2011 WL 2446598, at *3-4 (N.D. Ill. June 15, 2011). Plaintiffs issued notice to more than 2,000 potential plaintiffs, and 346 opted in, including all 141 original plaintiffs to this case. *See Blakes*, 2013 WL 6662831, at *2 (N.D. Ill. Dec. 17, 2013). After significant discovery, on December 17, 2013, the *Blakes* court granted Illinois Bell's motion for decertification with respect to all but one of the plaintiffs' claims, concluding that the remaining claims were too diverse, individualized, and fact-specific to be litigated collectively under FLSA Section 216(b). *Id*.

Despite the ruling in *Blakes*, on February 28, 2014, the same plaintiffs' counsel filed this lawsuit, purporting to join the individual claims of 141 plaintiffs who allegedly work or worked for Illinois Bell within the Northern District, each of whom was also an opt-in plaintiff in *Blakes*. Dkt. 1. Plaintiffs filed an amended complaint on March 5, 2014. Dkt. 8. In both complaints, plaintiffs acknowledged that they "are seeking to assert those claims that were not certified to go forward on a collective basis in" *Blakes*, and that the *Blakes* decertification order "allow[ed] those individuals impacted by it to file *individual claims* such as those raised here." Dkt. 1 at ¶ 3; Dkt. 8 at ¶ 3 (emphasis added).

On May 1, 2014, Illinois Bell's counsel provided plaintiffs and Maduff & Maduff LLC (the only plaintiffs' counsel of record at the time) written notification that their filing of a lawsuit joining 141 plaintiffs was an improper attempt to circumvent the *Blakes* decertification decision. *See* Exhibit A.

Additionally, defense counsel explained in its May 1, 2014 letter that even if the parties could disregard the *Blakes* decertification order, a reasonable inquiry, as required by Rule 11(b), would have revealed that it was frivolous to assert that plaintiffs' claims satisfy Rule 20's permissive joinder requirements. *See id.* Specifically, at the time plaintiffs filed their complaint

2

and amended complaint in this case, plaintiffs and their attorneys were well aware that the allegations in the complaint were irrelevant or inapplicable to many of the individual plaintiffs. For example, some of the alleged "off-the-clock" work tasks identified in the initial pleadings included "[r]emaining on the job site while eating to watch a manhole" and "watching the manhole to ensure safety." Dkt. 108 at ¶¶ 198(c) and 199. During discovery in *Blakes*, however, which included the depositions of 11 of the original plaintiffs in this matter, several individuals testified that they *never* (or very rarely) worked in a manhole. *See* Exhibit A at 3. Additionally, plaintiffs raised claims involving MSOC on behalf of all plaintiffs, where plaintiffs' counsel was aware from discovery in *Blakes* that the employment of some plaintiffs terminated before Illinois Bell implemented MSOC in February 2010. *See id.* at 3-4. Similarly, plaintiffs' counsel knew that any allegations regarding computer timekeeping were irrelevant for any plaintiff whose employment ended before technicians began reporting their own time electronically in December 2009. *See id.* at 4. Thus, defense counsel informed plaintiffs' counsel that if plaintiffs did not correct the numerous factual misrepresentations in their complaints and re-file individual lawsuits, Illinois Bell intended to seek appropriate sanctions under Rule 11.

Over the course of the next few months, 52 individuals voluntarily dismissed their claims, and 53 plaintiffs secured separate counsel. On July 22, 2014, defense counsel sent similar letters to these new attorneys, the Law Offices of Colleen McLaughlin, the Law Offices of John Billhorn, Utreras Law Offices, Inc., and Law Office of Brian D. Massatt, and gave plaintiffs another opportunity to cure their misconduct. *See* Exhibits B-E. However, on July 29, 2014, rather than filing individual claims, the remaining 89 plaintiffs once again lumped their claims together in the 178-page, 1,318-paragraph Second Amended Complaint ("SAC"). Dkt. 108. The SAC suffers from the same deficiencies as the first two complaints. In fact, the new

allegations further underscore the impropriety of proceeding as an 89-plaintiff lawsuit in direct contravention of Magistrate Judge Kim's decertification order. *See* Dkt. 116 at 6.

Illinois Bell's Motion to Sever details why the SAC's claims are improperly joined, including, *inter alia*, the *Blakes* court found that theories identical to those raised in the SAC were not suitable for collective litigation; the allegations contained in the SAC show that plaintiffs' individualized and diverse claims do not arise out of a single transaction, occurrence, or series of transactions or occurrences; and plaintiffs have not raised any question of law or fact that is common to all 89 plaintiffs under Rule 20(a). *See* Dkt. 116 at 10-15. Rather, plaintiffs' allegations arise from different time periods, involve at least 48 different locations, implicate at least 162 different supervisors, and concern plaintiffs who have worked multiple types of Cable Splicing jobs. *See id.* at 15. This is not simply a situation in which plaintiffs seek to advance an unsuccessful legal argument or theory. To the contrary, the strategy of amalgamating dozens of former opt-in plaintiffs into a single lawsuit in spite of a court order rejecting the very same theories is lacking in any legitimate purpose.

Illinois Bell served this motion on plaintiffs' counsel on August 29, 2014, and thereby provided notice of its request that plaintiffs not oppose its motion to dismiss for misjoinder and to require individual suits; dismiss the claims of every plaintiff but Daryl Adkins and file an amended complaint for him only, if Mr. Adkins elects to pursue his individual claims; and, for those who choose to do so, re-file individual suits (with the appropriate filing fees). Illinois Bell reserves all defenses to any such newly filed complaints, including but not limited to statute of limitations defenses, and will review any new complaint as well to ensure future Rule 11 compliance. The filing of this Rule 11 motion now, after 21 days from its service under Rule 11(c)(2) – or September 22, 2014 – reflects that plaintiffs have not complied with these requests

4

or their Rule 11 obligations and, accordingly, Illinois Bell seeks the requested relief and sanctions set forth below, which includes all fees incurred in defending this lawsuit since it was originally filed.

## ARGUMENT

Under Rule 11(b) of the Federal Rules of Civil Procedure, by presenting a signed pleading, motion, or other paper to the court, an attorney certifies to the court that to the best of his or her knowledge, information, or belief, and formed **after a reasonable inquiry**:

> it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or **needlessly increase the cost of litigation**;
>
> the claims, defenses, and other legal contentions **are warranted by existing law** or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> [and]
>
> the **factual contentions have evidentiary support**, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation.

Fed. R. Civ. P. 11(b)(1), (2) and (3) (emphasis added).

Put simply, under Rule 11, counsel has "a duty to make a reasonable inquiry in advance of filing to ensure that no action 'for any improper purpose' is filed." *City of E. St. Louis v. Circuit Ct. for the Twentieth Judicial Circuit*, 986 F.2d 1142, 1143 (7th Cir. 1993). *See also Brunt v. Serv. Emp. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002) ("Rule 11 imposes a duty on attorneys to ensure that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose.") (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1013 (7th Cir. 2004) (citation omitted).

To enforce Rule 11, courts have discretion to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). In determining whether there has been a violation, courts consider the underlying dispute from two perspectives:

> First, a court *subjectively* considers the facts to determine if the claim is made in good faith. Second, there must be a reasonable inquiry into both fact and law; the legal theory must be *objectively* warranted by existing law or a good faith argument for the modification of existing law; and the lawyer must believe that the complaint is well grounded in fact.

*Purze v. City of Evanston*, No. 13-cv-01503, 2013 WL 4501442, at *6 (N.D. Ill. Aug. 21, 2013) (citing *Tabrizi v. Village of Glen Ellyn*, 883 F.2d 587, 592 (7th Cir. 1989)) (internal citations and quotations omitted) (emphases in original). Regarding the objective component, the Seventh Circuit has stated that "[a]n empty head but pure heart is no defense. [Rule 11] requires counsel to read and consider before litigating." *Tabrizi*, *supra* at 592 (citation omitted). *See also Int'l Bhd. of Elec. Workers, Local 134 v. Cunningham*, No. 12 C 7487, 2014 WL 3562828, at *1 (N.D. Ill. July 14, 2014) ("In reviewing a Rule 11 motion for sanctions, this Court employs a standard of objective reasonableness, and must consider whether the party or his counsel should have known that his position is groundless.") (citing *Cuna Mut. Ins. Soc. v. Office and Prof'l Emp. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006)).

Here, plaintiffs cannot satisfy either the subjective or objective components of this analysis. They had no reasonable factual basis to join the claims of 89 (originally 141) individuals that the *Blakes* court already determined were not appropriate for collective adjudication. This is particularly true here, where the original complaint was filed by, and a majority of the individual plaintiffs continue to be represented by, the same counsel representing the class in *Blakes*. In fact, given the extensive discovery in *Blakes*, they clearly were aware that

6

the vague factual assertions regurgitated in the complaint and first amended complaint could not support the wage and hour claims asserted.  Plaintiffs' counsel had the information necessary to determine whether each claim was applicable to each individual plaintiff both from *Blakes* and by simply discussing the claims with their clients.  Ignoring their duty to investigate, they filed a lawsuit asserting general, "representative" facts without any basis for concluding those "facts" applied to each individual plaintiff.  Thus, plaintiffs and their counsel could not have believed in "good faith" that joinder of their claims was appropriate.

Moreover, even if plaintiffs had such a good faith belief at the time they filed their initial complaint and amended complaint, plaintiffs' counsel's apparent subsequent investigation, which resulted in the 178-page, 1,318-paragraph SAC, also should have made clear to plaintiffs and their attorneys that plaintiffs could not meet Rule 20's permissive joinder requirements.  *See* Fed. R. Civ. P. 20(a)(1).  *See also* Dkt. 116 at 10-15.  Thus, plaintiffs should have voluntarily dismissed their joint claims and re-filed individual lawsuits, with the attendant filing fees.  *See* Fed. R. Civ. P. 11(b), (c) advisory committee notes (1993) (a litigant may be sanctioned for "insisting upon a position after it is no longer tenable"); *Philos Technologies, Inc. v. Philos & D, Inc.*, 943 F. Supp. 2d 880, 883 (N.D. Ill. 2013) (although "there is no need to update old pleadings and submissions if they were not sanctionable at the time they were filed…[a]s more is discovered, however, a party or attorney cannot continue to advocate a claim that lacks a legal or factual basis.") (citation omitted).

While "Rule 11 sanctions are only to be granted sparingly…and should not be imposed lightly," *Lefkovitz v. Wagner*, 219 F.R.D. 592, 592-93 (N.D. Ill. 2004) (citations omitted), plaintiffs' insistence on filing – and continuing to pursue – a multi-plaintiff action when they had no reasonable factual or legal basis to do so is the type of unreasonable conduct contemplated by

7

Rule 11. *See Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) (finding sanctions appropriate where plaintiff "continued to advocate a claim that had no legal basis and refused to alter or withdraw it when that deficiency was pointed out to it"); *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) ("sanctions are warranted when the claimant exhibits a deliberate indifference to obvious facts").

Rule 11 authorizes courts to impose a sanction that "suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Such sanctions may include, "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* While sanctions typically are payable to the court, there are "unusual circumstances under which Rule 11's goal of deterrence cannot be accomplished without compensatory sanctions in the form of an award of attorney's fees and expenses." *Philos Techs, Inc.*, 943 F. Supp. 2d at 886 (citing Fed. R. Civ. P. 11(b), (c) advisory committee notes (1993)) (internal quotations omitted). *See also Feldman v. Olin Corp.*, No. 09-168-GPM, 2010 WL 4918755, at *1 (S.D. Ill. Nov. 29, 2010) (assessing defendants' fees and costs against plaintiff where its claims were groundless and ignored the individual defendant's "attempts to rightfully extricate itself from a proceeding where it was an improper defendant"). The deliberate attempt by plaintiffs and their counsel to circumvent the decertification order in *Blakes* and the Federal Rules of Civil Procedure's joinder rules constitutes such an "unusual circumstance" warranting the necessary deterrent effect of an award of attorneys' fees and expenses to Illinois Bell.

8

## CONCLUSION

WHEREFORE, for the foregoing reasons, Illinois Bell respectfully requests that plaintiffs and their counsel be sanctioned pursuant to Rule 11 and that plaintiffs and their counsel be ordered to reimburse Illinois Bell for its reasonable attorneys' fees and costs incurred since the inception of this lawsuit.

September 25, 2014                                                  Respectfully submitted,


                                                                  By: */s/ Gregory P. Abrams*

George A. Stohner (admitted *pro hac vice*)
Gregory P. Abrams
Rita Srivastava
Matthew A. Russell
Morgan, Lewis & Bockius, LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
312.324.1000
gstohner@morganlewis.com
gabrams@morganlewis.com
rsrivastava@morganlewis.com
marussell@morganlewis.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 25, 2014, a true and correct copy of the foregoing document was served by electronic means through the Court's ECF system on all counsel of record, namely:

Aaron Maduff
Michael Maduff
Walker Lawrence
Maduff & Maduff LLC
205 N. Michigan Avenue, Suite 2050
Chicago, IL 60601
ABMaduff@madufflaw.com
MLMaduff@madufflaw.com
WRLawrence@madufflaw.com

Brian D. Massatt
Law Office of Brian D. Massatt
8824 Glenshire Street
Tinley Park, Illinois 60487
bmassatt@comcast.net

Colleen M. McLaughlin
Elisa Hobfoll
Law Offices of Colleen M. McLaughlin
1751 S. Naperville Rd. Ste 209
Wheaton, IL 60189
colleen@cmmclaw.com
elissa@cmmclaw.com

John Billhorn
Billhorn Law Firm
120 S. State Street, Suite 400
Chicago, IL 60603
jbillhorn@billhornlaw.com

Mario Utreras
Utreras Law Offices, Inc.
205 W. Wacker Dr., Suite 1600
Chicago, Illinois 60606
mutreras@utreraslaw.com

*/s/ Gregory P. Abrams*
Attorney for Defendant