# EXHIBIT A

Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601-5094
Tel. 312.324.1000
Fax: 312.324.1001
www.morganlewis.com

# Morgan Lewis
C O U N S E L O R S   A T   L A W

**George A. Stohner**
Partner
312.324.1153
gstohner@morganlewis.com

May 1, 2014

**Via E-Mail**

Walker R. Lawrence
Aaron B. Maduff
Michael L. Maduff
Maduff & Maduff LLC
Michigan Plaza at Illinois Center
205 N. Michigan Ave., Suite 2050
Chicago, IL 60601

Re:     *Tinoco et al. v. Illinois Bell Tele. Co. d/b/a AT&T Illinois*, No. 1:14-cv-1456 (N.D. Ill.);
*Anderson et al. v. Illinois Bell Tele. Co. d/b/a AT&T Illinois*, No. 1:14-cv-04025 (C.D. Ill.);
*Denny et al. v. Illinois Bell Tele. Co. d/b/a AT&T Illinois*, No. 2:14-cv-02035 (C.D. Ill.);
*Ferguson v. Illinois Bell Tele. Co. d/b/a AT&T Illinois*, No. 3:14-cv-00297 (S.D. Ill.)

Dear Counsel:

This letter concerns the four lawsuits captioned above that you have filed against Illinois Bell. As you know, we represent Illinois Bell in *Blakes v. Illinois Bell Telephone Co.*, No. 11-cv-336, also pending in the Northern District. We learned of these lawsuits through our own diligence, as you have neither served Illinois Bell in any of these actions nor contacted us to determine whether we would be handling them.[1] Although we are under no obligation to do so, we write to inform you that Illinois Bell believes the filing of these lawsuits violates Federal Rule of Civil Procedure 11 and should be withdrawn. If you refuse to do so, we intend to move forward with a formal Rule 11 motion and would seek our client's attorneys' fees and costs for having to respond to these lawsuits. Because Illinois Bell has not yet been served, you may resolve these issues quickly, sparing both our client and the court the unnecessary burden of addressing the issues described below. Indeed, it appears that the *Tinoco* court has scheduled an initial conference on May 7, 2014, and ordered a status report by May 2, 2014. (*Tinoco*, Dkt. 10.) We

---

[1] Nothing in this letter should be construed as a waiver of Illinois Bell's objections to plaintiffs' lack of service in any of the above-captioned lawsuits. We discovered these lawsuits through regular monitoring for potential litigation against our client. Illinois Bell thus expressly reserves all such objections.

Morgan Lewis
C O U N S E L O R S   A T   L A W

May 1, 2014
Page 2

have informed the court in writing that Illinois Bell has not been served (a copy of this letter is attached), and we also ask that you advise the court immediately that the May 7, 2014 conference should be canceled.

With respect to the *Tinoco* matter, it is obvious that this lawsuit is an attempt at an "end around" Judge Kim's decertification decision in *Blakes*. Moreover, a reasonable inquiry under the circumstances here would have revealed that it is frivolous to assert that plaintiffs' claims satisfy Rule 20's permissive joinder requirements. *See* Fed. R. Civ. P. 11(b)(2).

We understand that the *Tinoco* case is not pled as a putative collective or class action. But the *Tinoco* case nonetheless aggregates the claims of 141 individual plaintiffs, who could only be grouped in one proceeding for the same reasons the *Blakes* plaintiffs asserted, unsuccessfully, that collective action certification was proper, i.e., that they were subjected to common policies and that individualized issues would not overwhelm that proceeding. As you know, however, Judge Kim's decertification ruling in *Blakes* rejected theories for collective litigation that were nearly identical to those raised in *Tinoco*, finding no basis for resolving plaintiffs' claims collectively. For example, Judge Kim rejected the very same MSOC-based "efficiency" theory raised in the *Tinoco* amended complaint (*see* Dkt. 8 ¶¶ 156-166), concluding that "it would be impossible to resolve" such questions on a collective basis (*Blakes* Order at 32), in part because the claims are not based on "an illegal common policy" (*id.* at 29) and resolving them would only result "in an overwhelming amount of individual inquiries" (*id.* at 27). Likewise, Judge Kim rejected joint treatment of the same employee sub-groups as those alleged in *Tinoco*: "[T]his court determines that the same individual variations that preclude collective treatment of the class of opt-in cable splicers as a whole precludes a finding of the requisite degree of similarity among opt-in plaintiffs in each sub-class." (*Id.* at 46.) Judge Kim's conclusions were unequivocal: "there is *no gain* to be derived from the collective approach" (*id.* at 51 (emphasis added)) with respect to the theories plaintiffs now assert in *Tinoco*.

We thus consider *Tinoco* an obvious attempt to circumvent the *Blakes* decertification order and shop for another judge. In light of the *Blakes* order, the notion that the diverse individual claims of 141 separate plaintiffs are properly joined in a single action pursuant to Rule 20 is frivolous. As the *Blakes* order makes clear, it is unreasonable to assert that each *Tinoco* plaintiff's claims arise from the same transaction or occurrence, involve any question of law or fact common to *all* plaintiffs, or that resolving all 141 plaintiffs' unique claims collectively would somehow avoid prejudice and delay, promote judicial economy, or further principles of fundamental fairness. *See* Fed. R. Civ. P. 20(a).

Furthermore, even if we could somehow disregard the prior *Blakes* decertification decision, the *Tinoco* amended complaint asserts allegations that a reasonable inquiry would reveal lack evidentiary support for each of the individual named plaintiffs. Rule 11 provides that by presenting a pleading to the court, you have certified to the best of your "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that,

Morgan Lewis
COUNSELORS AT LAW

May 1, 2014
Page 3

among other things, the "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). Each *Tinoco* plaintiff's claims arise from different time periods, involve different locations, implicate different managers, and invoke varying theories of recovery. Illinois Bell has a right to know the allegations and claims specific to each individual plaintiff to adequately prepare its defense, yet this information is impossible to discern from the amended complaint.

To the contrary, the amended complaint only describes each plaintiff's date of employment, how each is or was a "Cable Splicer for Illinois Bell," and identifies "at least" some of the garages to which each plaintiff was assigned. (Dkt. 8 ¶¶ 6-146.) It contains *no additional* individualized information about each plaintiff – most notably which type of "Cable Splicer" each plaintiff was during his or her employment, even though the amended complaint itself acknowledges that there are at least three sub-groups of "Cable Splicers," and "the particular jobs that are performed by a particular type of Cable Splicer var[y]." (*Id.* ¶ 153.) As a result, the complaint contains allegations that are not relevant to many plaintiffs and thus do not belong in one complaint. Such scattershot pleading not only makes it impossible for Illinois Bell to discern which allegations apply to which individuals, but it also sets forth certain factual allegations wholly devoid of evidentiary support for certain plaintiffs.

You must know from *Blakes* that allegations in the *Tinoco* amended complaint are irrelevant or inapplicable for many of the individual plaintiffs. For example, the *Tinoco* amended complaint identifies only "copper and fiber cable splicers" as employees who "perform work in manholes." (*Id.* ¶ 177.) But even though the amended complaint also purports to apply to "DAVAR" and "DEG" cable splicers (*id.* ¶¶ 181-190), it lists among the alleged "off-the-clock" work tasks such as "[r]emain on the job site while eating to watch a manhole" and "watching the manhole to ensure safety" (*id.* ¶¶ 198(c), 199). Twenty-five individuals were deposed in *Blakes*, including 18 opt-in plaintiffs – 11 of whom are now also named plaintiffs in *Tinoco*. As you know, even among this limited sample, several individuals testified that they *never* (or very rarely) worked in a manhole while working as a DAVAR or DEG technician. (*See, e.g.*, Blakes Dep. at 214; Hunt Dep. at 163; Haynes (also a plaintiff in *Tinoco*) Dep. at 10-11, 28; Blanchette (also a plaintiff in *Tinoco*) Dep. at 11, 35; Sterk (also a plaintiff in *Tinoco*) Dep. at 13-15; Williams Dep. at 147.) For example, William Sterk, a named plaintiff in *Tinoco*, testified in *Blakes* that he never worked in a manhole as a DEG technician and did so sporadically to assist other technicians when working in DAVAR. (Sterk Dep. at 14-15.) Consequently, many of the amended complaint's allegations do not apply – and are therefore frivolous and without evidentiary support – with respect to any plaintiff who never worked at a manhole.

Other variations like this pervade the amended complaint, such as raising allegations regarding MSOC in a case involving plaintiffs whose employment you know terminated before MSOC was implemented in February 2010. You have the information you need to determine whether an individual was subject to MSOC, both from *Blakes* and by simply discussing with your clients. In fact, Illinois Bell's records indicate that approximately 39 of the 141 *Tinoco* plaintiffs left Illinois Bell before MSOC took effect. Thus, the numerous MSOC-related allegations are

Morgan Lewis
C O U N S E L O R S   A T   L A W

May 1, 2014
Page 4

irrelevant for these individuals. Likewise, allegations regarding computer timekeeping (*see, e.g.*, Am. Compl. ¶¶ 192-196) are irrelevant and frivolous for any plaintiffs whose employment ended before technicians began reporting their own time electronically in December 2009 (*see, e.g.*, Chambers Dep. at 93 (only used paper timesheets while a cable splicer); Anderson (also a plaintiff in *Tinoco*) Dep. at 185 (same)). In fact, this electronic timesheet claim is especially inappropriate because each *Tinoco* plaintiff already has the same claim that remains certified in *Blakes*.

Simply put, it is unreasonable and inappropriate to allege such general, "representative" facts absent support that those facts apply to each individual plaintiff. Either you are representing to the Court that all allegations apply to all individuals – which is impossible, as you are aware – or you have not taken the time to determine the nature of each plaintiff's claims, which falls short of Rule 11's requirements when filing a complaint. You have the information needed to ascertain each plaintiff's individual claims, and you must bring those actions separately with particularized allegations that comply with the pleading requirements under the Federal Rules.

The other three cases (*Anderson*, *Denny*, and *Ferguson*) certainly involve fewer plaintiffs than *Tinoco*, but the same deficiencies apply. Each complaint is little more than a "cut and paste" exercise from the *Tinoco* allegations. For example, Illinois Bell's records show that Michael Woods (a plaintiff in the *Denny* case) terminated employment in August 2008; yet he is now part of a case raising allegations about MSOC and electronic timekeeping, both of which were implemented much later.[2] Mr. Woods thus never experienced MSOC, and these allegations do not belong in his lawsuit. Similarly, not only did Gary Crowder (another plaintiff in *Denny*) also leave Illinois Bell in 2009 (and thus never experience MSOC), but he did not identify *any* alleged pre-shift or post-shift work in his interrogatory responses in *Blakes* – and yet now alleges a litany of alleged off-the-clock activities before and after his shift. Mr. Crowder's allegations lack factual support, but you are also on notice of admissions that directly *contradict* his new claims. And Larry Ferguson is the only plaintiff in his case, yet his complaint asserts 80-plus paragraphs that we seriously doubt apply specifically to him. Indeed, the *Ferguson* complaint – despite having just one plaintiff – refers generically throughout to "Cable Splicers," describes the various categories of technicians, and never states the work Ferguson performed. Thus, as with *Tinoco*, we cannot see how these complaints were filed after the requisite Rule 11 inquiries. Even if you did not represent these plaintiffs in *Blakes*, it would be improvident to compile such sweeping allegations into a single complaint. But your failure here is particularly egregious, where you know that not all allegations apply to each plaintiff. Accordingly, you must re-file each person's claim individually and raise particularized allegations that provide Illinois Bell sufficient notice to adequately defend each claim.

Further, with respect to all of these cases, we are concerned about the possible lack of full disclosure to your clients concerning the ramifications of becoming an individual named plaintiff

---

[2] This also ignores, for the time being only, that the claims of some plaintiffs may be time-barred to the extent they are not tolled by *Blakes*.

Morgan Lewis
C O U N S E L O R S   A T   L A W

May 1, 2014
Page 5

in this lawsuit (as opposed to a member of a class or collective action). As you are likely aware, Rule 1.4 of the Illinois Rules of Professional Conduct requires that a lawyer shall, among other things, "reasonably consult with the client about the means by which the client's objectives are to be accomplished"; "promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required by these Rules"[3]; and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Ill. Rule of Prof. Conduct 1.4(a)-(b). As the comments to Rule 1.4 make clear, a "client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued." *Id.* cmt. [5].

We believe that all of your clients may not have received "sufficient information" about the nature of their participation as a named plaintiff. Each complaint includes a second round of "FLSA Consent Forms" as exhibits. Yet none of these cases is styled as a collective action under the FLSA. These new (and unnecessary) consent forms suggest to us that each *Blakes* opt-in simply gave a veritable "power of attorney" for your firm to proceed as it saw fit. This generalized authority further suggests that some or all of the individuals may not be aware of these new lawsuits at all, their distinction from the collective action in *Blakes*, and the potential consequences of proceeding as an individual plaintiff – including being potentially responsible for Illinois Bell's recovery of its fees and costs and being required to participate in discovery and other aspects of litigation. Each plaintiff should be sufficiently informed to determine whether he or she wishes to pursue claims in this manner.

We also question whether each named plaintiff genuinely understood before you filed suit that they were stating in a public court filing that they "manipulate[d] the time records" used to determine their pay. (*See, e.g. Tinoco* Am. Compl. ¶ 165.) This is a clear violation of Illinois Bell's policies, which require employees to record and receive pay for all the time they worked. We trust that *all* of these individuals understand that this is an admission against their interests, that they acknowledge violating the written policies of their employer, and that such a violation ordinarily would subject them to potential discipline.

\*      \*      \*

As explained above, and without waiving any additional arguments regarding the propriety of these complaints, we believe the filing of these four lawsuits is sanctionable under Rule 11. We thus invite you to voluntarily dismiss these lawsuits, sparing all parties the time and expense of resolving these various deficiencies. If you do not do so, we will have no choice but to move forward with formal Rule 11 motions and seek our client's attorneys' fees and costs once Illinois Bell is served with each of the four complaints. If your clients still wish to proceed with new lawsuits, you must file suit for each plaintiff individually, after conducting the appropriate

---

[3] The Rules define "informed consent" to mean "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks and reasonably available alternatives to the proposed course of conduct." Rule 1.0(e).



May 1, 2014
Page 6

diligence, pay the appropriate filing fee for each case, and include only the particularized allegations that apply to that individual plaintiff. If the new filings do not cure the deficiencies discussed above – including particularizing for each plaintiff the allegations applicable to each – we likewise would be required to pursue a Rule 11 motion. Please respond promptly.

Sincerely,


/s George A. Stohner


George A. Stohner

GAS

EXHIBIT B

Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601
Tel: 312.324.1000
Fax: 312.324.1001
www.morganlewis.com

# Morgan Lewis
### COUNSELORS AT LAW

**Gregory P. Abrams**
Associate
312.324.1174
gabrams@morganlewis.com

July 22, 2014

**VIA E-MAIL & USPS MAIL**

Colleen M. McLaughlin
Elisa J. Hobfoll
Law Offices of Colleen M. McLaughlin
1751 South Naperville Road, Suite 209
Wheaton, IL 60189
Email: colleen@cmmclaw.com

Re:   *Tinoco v. Illinois Bell Telephone Co.*, N.D. Ill., Case No. 1:14-cv-01456

Dear Counsel:

We represent Illinois Bell Telephone Company ("Illinois Bell") in the above-referenced matter. As you also know, from our May 1, 2014 letter to your clients' former attorneys, Maduff & Maduff, LLC ("Maduff & Maduff"), and our May 20 status conference, we believe the complaint in this case was improvidently filed and violates Rule 11 of the Federal Rules of Civil Procedure.[1]  Although we understand you were not counsel for any plaintiffs until after their complaint was filed and after we sent our May 1 letter to Maduff & Maduff, we wish to make clear that the issues we identified in that letter apply equally to your clients – for the reasons stated therein, as well as (at least) those discussed below.  We ask that you cure these issues by: (1) withdrawing your clients' claims in this case; and (2) if your clients wish to continue to proceed, filing individual, single-plaintiff lawsuits.  If you do not take these steps by July 30, we will move forward with pursuing the appropriate Rule 11 recourse.

As noted in our May 1 letter, the *Tinoco* complaint contains more than 80 paragraphs, many of which simply recite generic allegations regarding Cable Splicers without any discussion of your clients' own circumstances or claims.  In fact, the only information specific to your 16 clients (James Miller, Michael Edwards, Robert House Jr., Ronald Malkowski, Adam Pavur, Charles Phillips, Ian Niemiec, Joe Bowen, Brian Kube, Brian Ericson, Robert Balmes, Robert Passi,

---

[1]  We assume you have received this letter but attach it here for your review if that is not the case.



Colleen M. McLaughlin
Elisa J. Hobfoll
July 22, 2014
Page 2

James Tennessen, Lee Faber, Joseph Honkisz, and Timothy McNally) are their dates of employment,[2] that they were Illinois Bell Cable Splicers (without specifying the type of cable splicer), and the locations of their assigned garages. It contains no information regarding *your clients'* specific allegations. Indeed, there appears to have been little to no investigation of your clients' allegations before the complaint was filed, aside from confirming they opted into the *Blakes* FLSA collective action. The *Tinoco* matter is not brought as a class or collective action; by filing this lawsuit, each individual plaintiff represents that he has his own, individual claim against Illinois Bell. Nonetheless, the complaint contains numerous allegations that a requisite pre-filing investigation would have demonstrated do not apply to your clients.

For example, the *Tinoco* complaint contains various allegations regarding Cable Splicers. We understand Bowen and McNally stopped working as Cable Splicers as early as August 2010 and November 2010, respectively. The complaint raises multiple allegations about MSOC, which was not implemented until approximately February 2010. But in *Blakes*, plaintiffs conceded, and the Court agreed, that they did not seek conditional certification on the basis of the efficiency-pressure or MSOC theory. (*Blakes v. Ill. Bell Tel. Co.*, No. 11-cv-336, Dkt No. 233, pp. 21-25). Any allegations regarding MSOC therefore were not tolled by any of your clients' opt-in consents in *Blakes*, which means that any such allegations would be significantly circumscribed for anyone (like Bowen and McNally) who stopped working as Cable Splicers in 2010.

Similarly, the complaint contains allegations about the JAM time recording system, which Illinois Bell Cable Splicers began using to record their own time no earlier than December 2009. However, any claim regarding electronic timekeeping – by any plaintiff – is inappropriate because your clients already have the same claim certified and pending before the *Blakes* court.[3]

As you may know, Ericson is the only one of your 16 clients who gave a deposition in *Blakes*. In this deposition, when asked whether he complained about overtime as it related to working through lunch he stated, "No, I never did." (Ericson Dep. 210). Ericson's case then in particular is demonstrably baseless and subject to dismissal. *See e.g.*, *Gaines v. KFive Constr. Corp.*, 742 F.3d 256, 270-71 (7th Cir. 2014) (an employer has no obligation to pay for work it did not know about and had no reason to know about). We would be happy to send you a copy of Ericson's deposition transcript and exhibits, and other applicable materials referenced in this letter, provided that any materials designated as "confidential" in *Blakes* will be treated as such by you and your clients. Please let us know if you wish to receive these items.

---

[2] The complaint contains no dates of employment for McNally. (Am. Compl. ¶ 134.)

[3] We understand that although Bowen was terminated from Illinois Bell in March 2011 after abandoning his job, according to our records, Bowen seems to have stopped recording time in the JAM system as early as July 2010. McNally was terminated in November 2010. Thus, any allegations regarding JAM – if they were properly before this Court – are significantly limited for at least these two individuals.



Colleen M. McLaughlin
Elisa J. Hobfoll
July 22, 2014
Page 3

The foregoing is an illustrative, not exhaustive, collection of reasons why your clients have not properly pled their claims. Indeed, it is for plaintiffs' counsel in the first instance, not us, to identify their clients' specific allegations. Although you were not responsible for filing this lawsuit, because you now represent Miller, Edwards, House Jr., Malkowski, Pavur, Phillips, Niemiec, Bowen, Kube, Ericson, Balmes, Passi, Tennessen, Faber, Honkisz and McNally, allowing this complaint to continue in its present form would be sanctionable.

As explained here and in our May 1 letter, we believe your clients should withdraw from the pending complaint, file new, single-plaintiff suits and pay the requisite filing fees. To be clear, any new complaint must raise allegations particularized to each individual, rather than the generic and scattershot nature of the operative complaint's allegations. We also believe that Ericson has no viable claim as a matter of law and should not continue in this or any future litigation. If you and your clients do not proceed in this manner, we will be forced to move forward with a Rule 11 motion and seek our client's fees and costs for doing so.

Please feel free to contact us if you wish after you have had an opportunity to consult with your clients.

Sincerely,

Gregory P. Abrams

Enclosure

# EXHIBIT C

Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601
Tel: 312.324.1000
Fax: 312.324.1001
www.morganlewis.com

# Morgan Lewis
C O U N S E L O R S   A T   L A W

**Gregory P. Abrams**
Associate
312.324.1174
gabrams@morganlewis.com

July 22, 2014

**VIA E-MAIL & USPS MAIL**

John William Billhorn
Billhorn Law Firm
120 South State Street, Suite 400
Chicago, IL 60603
Email: jbillhorn@billhornlaw.com

Re:     *Tinoco v. Illinois Bell Telephone Co.*, N.D. Ill., Case No. 1:14-cv-01456

Dear Counsel:

We represent Illinois Bell Telephone Company ("Illinois Bell") in the above-referenced matter. As you also know, from our May 1, 2014 letter to your clients' former attorneys, Maduff & Maduff, LLC ("Maduff & Maduff"), and our May 20 status conference, we believe the complaint in this case was improvidently filed and violates Rule 11 of the Federal Rules of Civil Procedure.[1]  Although we understand you were not counsel for any plaintiffs until after their complaint was filed and after we sent our May 1 letter to Maduff & Maduff, we wish to make clear that the issues we identified in that letter apply equally to your clients – for the reasons stated therein, as well as (at least) those discussed below.  We ask that you cure these issues by: (1) withdrawing your clients' claims in this case; and (2) if your clients wish to continue to proceed, filing individual, single-plaintiff lawsuits.  If you do not take these steps by July 30, we will move forward with pursuing the appropriate Rule 11 recourse.

As noted in our May 1 letter, the *Tinoco* complaint contains more than 80 paragraphs, many of which simply recite generic allegations regarding Cable Splicers without any discussion of your clients' own circumstances or claims.  In fact, the only information specific to your five clients (Bruce Blanchette, Virgil Green, Kardell Perry, Keith Reed, and Nathaniel Thompson) are their dates of employment, that they were Illinois Bell Cable Splicers (without specifying the type of cable splicer), and the locations of their assigned garages.  It contains no information regarding

---

[1] We assume you have received this letter but attach it here for your review if that is not the case.

Morgan Lewis
COUNSELORS AT LAW

John William Billhorn
July 22, 2014
Page 2

*your clients'* specific allegations. Indeed, there appears to have been little to no investigation of your clients' allegations before the complaint was filed, aside from confirming they opted into the *Blakes* FLSA collective action. The *Tinoco* matter is not brought as a class or collective action; by filing this lawsuit, each individual plaintiff represents that he has his own, individual claim against Illinois Bell. Nonetheless, the complaint contains numerous allegations that a requisite pre-filing investigation would have demonstrated do not apply to your clients.

For example, the *Tinoco* complaint contains various allegations regarding Cable Splicers. We understand Thompson was terminated from Illinois Bell in July 2010 for unacceptable conduct. According to our records, however, Thompson stopped working in a Cable Splicer position in Fall of 2008. The complaint contains extensive allegations regarding manhole work. Our records reflect, however, that at least Green has worked as a DEG Cable Splicer. Those in DEG (for Digital Electronics Group) typically work on monitoring equipment rather than working in the field or underground, and Green therefore would not have performed any manhole work during that period.

Likewise, the *Tinoco* complaint raises multiple allegations about MSOC. But MSOC was not implemented for Illinois Bell Cable Splicers until approximately February 2010 – *after* records reflect Perry stopped working for Illinois Bell in June 2009 and Thompson stopped working as a Cable Splicer in 2008. In fact, in *Blakes*, plaintiffs conceded, and the Court agreed, that they did not seek conditional certification on the basis of the efficiency-pressure or MSOC theory. (*Blakes v. Ill. Bell Tel. Co.*, No. 11-cv-336, Dkt No. 233, pp. 21-25). Any allegations regarding MSOC therefore were not tolled by any of your clients' opt-in consents in *Blakes*, which means that any such allegations would be time barred anyway for Perry and Thompson since their employment as Cable Splicers terminated well before even a three-year FLSA statute of limitations.

Similarly, Illinois Bell Cable Splicers began using the JAM system to record their own time no earlier than December 2009. Thus, any allegations regarding JAM plainly are inapplicable to Perry. And any claim regarding electronic timekeeping – by any plaintiff – is even more inappropriate because your clients already have the same claim certified and pending before the *Blakes* court.

As you may know, Blanchette is the only one of your five clients who gave a deposition in *Blakes*. In this deposition, when asked if he ever complained to anyone that he worked through his lunch period to make his numbers, Blanchette testified, "No." (Blanchette Dep. 51). He also testified that he never told his supervisor he was completing transfer sheets, calling the engineer, or reviewing work prints during his lunch break. (*Id.* at 61). Blanchette's case then in particular is demonstrably baseless and subject to dismissal. *See e.g.*, *Gaines v. KFive Constr. Corp.*, 742 F.3d 256, 270-71 (7th Cir. 2014) (an employer has no obligation to pay for work it did not know about and had no reason to know about). We would be happy to send you a copy of Blanchette's



John William Billhorn
July 22, 2014
Page 3

deposition transcript and exhibits, and other applicable materials referenced in this letter, provided that any materials designated as "confidential" in *Blakes* will be treated as such by you and your clients. Please let us know if you wish to receive these items.

The foregoing is an illustrative, not exhaustive, collection of reasons why your clients have not properly pled their claims. Indeed, it is for plaintiffs' counsel in the first instance, not us, to identify their clients' specific allegations. Although you were not responsible for filing this lawsuit, because you now represent Blanchette, Green, Perry, Reed, and Thompson allowing this complaint to continue in its present form would be sanctionable.

As explained here and in our May 1 letter, we believe your clients should withdraw from the pending complaint, file new, single-plaintiff suits and pay the requisite filing fees. To be clear, any new complaint must raise allegations particularized to each individual, rather than the generic and scattershot nature of the operative complaint's allegations. We also believe that Blanchette has no viable claim as a matter of law and should not continue in this or any future litigation. If you and your clients do not proceed in this manner, we will be forced to move forward with a Rule 11 motion and seek our client's fees and costs for doing so.

Please feel free to contact us if you wish after you have had an opportunity to consult with your clients.

Sincerely,

Gregory P. Abrams

Enclosure

# EXHIBIT D

Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601
Tel: 312.324.1000
Fax: 312.324.1001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Gregory P. Abrams**
Associate
312.324.1174
gabrams@morganlewis.com

July 22, 2014

**VIA E-MAIL & USPS MAIL**

Mario E. Utreras
Utreras Law Offices, Inc.
205 W. Wacker Dr., Suite 1600
Chicago, IL 60606
Email: mutreras@utreraslaw.com

Re:   *Tinoco v. Illinois Bell Telephone Co.*, N.D. Ill., Case No. 1:14-cv-01456

Dear Counsel:

We represent Illinois Bell Telephone Company ("Illinois Bell") in the above-referenced matter. As you also know, from our May 1, 2014 letter to your clients' former attorneys, Maduff & Maduff, LLC ("Maduff & Maduff"), and our May 20 status conference, we believe the complaint in this case was improvidently filed and violates Rule 11 of the Federal Rules of Civil Procedure.[1] Although we understand you were not counsel for any plaintiffs until after their complaint was filed and after we sent our May 1 letter to Maduff & Maduff, we wish to make clear that the issues we identified in that letter apply equally to your clients – for the reasons stated therein, as well as (at least) those discussed below. We ask that you cure these issues by: (1) withdrawing your clients' claims in this case; and (2) if your clients wish to continue to proceed, filing individual, single-plaintiff lawsuits. If you do not take these steps by July 30, we will move forward with pursuing the appropriate Rule 11 recourse.

As noted in our May 1 letter, the *Tinoco* complaint contains more than 80 paragraphs, many of which simply recite generic allegations regarding Cable Splicers without any discussion of your clients' own circumstances or claims. In fact, the only information specific to your six clients (Michael Crawford, Winston Hodges, Jr., Charles Scott, Nicholas Vulgaris, Tony Wright, and Byron Young) are their dates of employment,[2] that they were Illinois Bell Cable Splicers

---

[1] We assume you have received this letter but attach it here for your review if that is not the case.
[2] The complaint contains no dates of employment for Vulgaris. (Am. Compl. ¶ 109.)

Almaty   Beijing   Boston   Brussels   Chicago   Dallas   Dubai*   Frankfurt   Harrisburg   Houston   Irvine   London   Los Angeles   Miami
Moscow   New York   Palo Alto   Paris   Philadelphia   Pittsburgh   Princeton   San Francisco   Tokyo   Washington   Wilmington
*In association with Mohammed Buhashem Advocates & Legal Consultants



Mario E. Utreras
July 22, 2014
Page 2

(without specifying the type of cable splicer), and the locations of their assigned garages. It contains no information regarding *your clients'* specific allegations. Indeed, there appears to have been little to no investigation of your clients' allegations before the complaint was filed, aside from confirming they opted into the *Blakes* FLSA collective action. The *Tinoco* matter is not brought as a class or collective action; by filing this lawsuit, each individual plaintiff represents that he has his own, individual claim against Illinois Bell. Nonetheless, the complaint contains numerous allegations that a requisite pre-filing investigation would have demonstrated do not apply to your clients.

For example, the *Tinoco* complaint contains extensive allegations regarding manhole work. But Wright testified in his deposition in *Blakes* that he has not worked in a manhole at any point during the three-year statute of limitations. (Wright Dep. 62, 90-91, 99.) Similarly, our records reflect that Vulgaris had worked as a DEG Cable Splicer. Those in DEG (for Digital Electronics Group) typically work on monitoring equipment rather than working in the field or underground, and Vulgaris therefore would not have performed any manhole work during that period.

Likewise, the *Tinoco* complaint raises multiple allegations about MSOC. But MSOC was not implemented for Illinois Bell Cable Splicers until approximately February 2010 – *after* records reflect Crawford (employment terminated November 2008), Hodges (employment terminated September 2009), and Vulgaris (employment terminated May 2009) stopped working for Illinois Bell. In fact, in *Blakes*, plaintiffs conceded, and the Court agreed, that they did not seek conditional certification on the basis of the efficiency-pressure or MSOC theory. (*Blakes v. Ill. Bell Tel. Co.*, No. 11-cv-336, Dkt No. 233, pp. 21-25). Any allegations regarding MSOC therefore were not tolled by your clients' opt-in consents in *Blakes*, which means that any such allegations would be time barred anyway for Crawford, Hodges, and Vulgaris since their employment terminated well before even a three-year FLSA statute of limitations.

Similarly, Illinois Bell Cable Splicers began using the JAM system to record their own time no earlier than December 2009. Thus, any allegations regarding JAM plainly are inapplicable to these three plaintiffs. And any claim regarding electronic timekeeping – by any plaintiff – is even more inappropriate because your clients already have the same claim certified and pending before the *Blakes* court.

As you may know, Wright is the only one of your six clients who gave a deposition in *Blakes*. In this deposition, when asked if he ever asked or told anyone that he worked through his lunch period, Wright testified, "Well, working through lunch is – if the manager says there's no overtime, of course, I'm not going to go up and tell him I worked it because he said no overtime, so, no I didn't tell him." (Wright Dep. 98). He also executed an acknowledgment that he would comply with AT&T's Code of Conduct, which expressly prohibits off-the-clock work. (Wright Dep. Ex. 2). Wright's case then in particular is demonstrably baseless and subject to dismissal. *See e.g., Boelk v. AT&T Teleholdings, Inc.*, No. 12-40, 2013 WL 3777251, at \*6 (W.D. Wis. July



Mario E. Utreras
July 22, 2014
Page 3

19, 2013) (granting summary judgment on Wisconsin Bell cable technician's unpaid meal break work claim and noting "if any employee deliberately prevents the employer from acquiring knowledge of the overtime work, the employer should not be held liable for overtime pay under the FLSA"); *Gaines v. KFive Constr. Corp.*, 742 F.3d 256, 270-71 (7th Cir. 2014) (an employer has no obligation to pay for work it did not know about and had no reason to know about). We would be happy to send you a copy of Wright's deposition transcript and exhibits, and other applicable materials referenced in this letter, provided that any materials designated as "confidential" in *Blakes* will be treated as such by you and your clients. Please let us know if you wish to receive these items.

The foregoing is an illustrative, not exhaustive, collection of reasons why your clients have not properly pled their claims. Indeed, it is for plaintiffs' counsel in the first instance, not us, to identify their clients' specific allegations. Although you were not responsible for filing this lawsuit, because you now represent Crawford, Hodges, Scott, Vulgaris, Wright, and Young, allowing this complaint to continue in its present form would be sanctionable.

As explained here and in our May 1 letter, we believe your clients should withdraw from the pending complaint, file new, single-plaintiff suits and pay the requisite filing fees. To be clear, any new complaint must raise allegations particularized to each individual, rather than the generic and scattershot nature of the operative complaint's allegations. We also believe that Wright has no viable claim as a matter of law and should not continue in this or any future litigation. If you and your clients do not proceed in this manner, we will be forced to move forward with a Rule 11 motion and seek our client's fees and costs for doing so.

Please feel free to contact us if you wish after you have had an opportunity to consult with your clients.

Sincerely,

Gregory P. Abrams

Enclosure

# EXHIBIT E

Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601
Tel: 312.324.1000
Fax: 312.324.1001
www.morganlewis.com

# Morgan Lewis
C O U N S E L O R S   A T   L A W

**Gregory P. Abrams**
Associate
312.324.1174
gabrams@morganlewis.com

July 22, 2014

**VIA E-MAIL & USPS MAIL**

Brian Massatt
Law Office of Brian D. Massatt
8824 Glenshire Street
Tinley Park, IL 60487
Email: bmassatt@comcast.net

Re:     *Tinoco v. Illinois Bell Telephone Co.*, N.D. Ill., Case No. 1:14-cv-01456

_____

Dear Counsel:

We represent Illinois Bell Telephone Company ("Illinois Bell") in the above-referenced matter. As you also know, from our May 1, 2014 letter to your clients' former attorneys, Maduff & Maduff, LLC ("Maduff & Maduff"), and our May 20 status conference, we believe the complaint in this case was improvidently filed and violates Rule 11 of the Federal Rules of Civil Procedure.[1]  Although we understand you were not counsel for any plaintiffs until after their complaint was filed and after we sent our May 1 letter to Maduff & Maduff, we wish to make clear that the issues we identified in that letter apply equally to your clients – for the reasons stated therein, as well as (at least) those discussed below.  We ask that you cure these issues by: (1) withdrawing your clients' claims in this case; and (2) if your clients wish to continue to proceed, filing individual, single-plaintiff lawsuits.  If you do not take these steps by July 30, we will move forward with pursuing the appropriate Rule 11 recourse.

As noted in our May 1 letter, the *Tinoco* complaint contains more than 80 paragraphs, many of which simply recite generic allegations regarding Cable Splicers without any discussion of your clients' own circumstances or claims.  In fact, the only information specific to your twenty clients (Jesse Love, Joseph Dutton, Marcus Conner, Benny Alphonse, Lorenzo Wiggins, Ronald Kelm, Anthony Porto, Harold Lofton, Theodore Strucinski, Jeff Keen, David Howard, Adam

_____

[1] We assume you have received this letter but attach it here for your review if that is not the case.

Morgan Lewis
COUNSELORS AT LAW

Brian Massatt
July 22, 2014
Page 2

Eakins, Byron Etapa, Victor Ballard, David Hilliard, Daryl Adkins, Keith Darnell, Frank Vaisvilas, Peter Hughes, Ignacio Gallegos) are their dates of employment,[2] that they were Illinois Bell Cable Splicers (without specifying the type of cable splicer), and the locations of their assigned garages. It contains no information regarding *your clients'* specific allegations. Indeed, there appears to have been little to no investigation of your clients' allegations before the complaint was filed, aside from confirming they opted into the *Blakes* FLSA collective action. The *Tinoco* matter is not brought as a class or collective action; by filing this lawsuit, each individual plaintiff represents that he has his own, individual claim against Illinois Bell. Nonetheless, the complaint contains numerous allegations that a requisite pre-filing investigation would have demonstrated do not apply to your clients.

For example, the *Tinoco* complaint contains various allegations regarding Cable Splicers. However, according to our records, at least six of your clients (Adkins, Ballard, Gallegos, Howard, Keen and Kelm) stopped working as Cable Splicers in 2010; four (Darnell, Eakins, Etapa, and Strucinski) in 2009; and another (Conner) as early as 2008. The complaint contains extensive allegations regarding manhole work. Our records reflect, however, that at least Etapa and Wiggins have worked as DEG Cable Splicers. Those in DEG (for Digital Electronics Group) typically work on monitoring equipment rather than working in the field or underground, and therefore Etapa and Wiggins would not have performed any manhole work during that period.

Likewise, the *Tinoco* complaint raises multiple allegations about MSOC. But MSOC was not implemented for Illinois Bell Cable Splicers until approximately February 2010 – *after* records reflect Darnell, Eakins, Etapa and Strucinski stopped working as Cable Splicers for Illinois Bell in 2009 and Conner in 2008. In fact, in *Blakes*, plaintiffs conceded, and the Court agreed, that they did not seek conditional certification on the basis of the efficiency-pressure or MSOC theory. (*Blakes v. Ill. Bell Tel. Co.*, No. 11-cv-336, Dkt No. 233, pp. 21-25). Any allegations regarding MSOC therefore were not tolled by any of your clients' opt-in consents in *Blakes*, which means that any such allegations would be time barred anyway for anyone (like Conner, Darnell, Eakins, Etapa, and Strucinski) who stopped working as Cable Splicers before February 2010.

Similarly, Illinois Bell Cable Splicers began using the JAM system to record their own time no earlier than December 2009. Thus, any allegations regarding JAM plainly are also inapplicable to Conner, Darnell, Etapa, and Strucinski.[3] And any claim regarding electronic timekeeping – by

---

[2] The complaint contains no dates of employment for Jesse Love. (Am. Compl. ¶ 15.)

[3] We would be happy to send you a copy of applicable materials referenced in this letter and produced in the *Blakes* matter that are related to your clients, provided that any materials designated as "confidential" in *Blakes* will be treated as such by you and your clients. Please let us know if you wish to receive these items.



Brian Massatt
July 22, 2014
Page 3

any plaintiff – is even more inappropriate because your clients already have the same claim certified and pending before the *Blakes* court.[4]

We also question the appropriateness of Keith Darnell's involvement in this matter. Our records reflect that Darnell passed away in October 2010. Please advise whether the proper successor or representative of Darnell provided the requisite authority to file this lawsuit and if so, to file the withdrawal and substitution of counsel. (Dkt. Nos. 19, 35).

The foregoing is an illustrative, not exhaustive, collection of reasons why your clients have not properly pled their claims. Indeed, it is for plaintiffs' counsel in the first instance, not us, to identify their clients' specific allegations. Although you were not responsible for filing this lawsuit, because you now represent Love, Dutton, Conner, Alphonse, Wiggins, Kelm, Porto, Lofton, Strucinski, Keen, Howard, Eakins, Etapa, Ballard, Hilliard, Adkins, Darnell, Vaisvilas, Hughes and Gallegos, allowing this complaint to continue in its present form would be sanctionable.

As explained here and in our May 1 letter, we believe your clients should withdraw from the pending complaint, file new, single-plaintiff suits and pay the requisite filing fees. To be clear, any new complaint must raise allegations particularized to each individual, rather than the generic and scattershot nature of the operative complaint's allegations. If you and your clients do not proceed in this manner, we will be forced to move forward with a Rule 11 motion and seek our client's fees and costs for doing so.

Please feel free to contact us if you wish after you have had an opportunity to consult with your clients.

---

[4] We also point out we understand Adkins was terminated from Illinois Bell in September 2011 after abandoning his job. According to our records, however, Adkins seems to have stopped recording time in the JAM system as early as July 2010. Our records also reflect Ballard, Gallegos, Howard, Keen and Kelm stopped working as Cable Splicers by November 2010, at the latest. Thus, any allegations regarding JAM – if they were properly before this Court – are significantly circumscribed for these individuals.



Morgan Lewis
COUNSELORS AT LAW

Brian Massatt
July 22, 2014
Page 4

Sincerely,

Gregory P. Abrams

Enclosure

DB1/ 80099456.1