**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DARYL ADKINS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T Illinois, <br><br> Defendant. | Case No. 14-cv-1456 <br><br> Hon. Judge Castillo |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR
<u>MISJOINDER AND TO REQUIRE INDIVIDUAL SUITS</u>**

Plaintiffs' Response to Illinois Bell's misjoinder motion (Dkt. 122, "Response") effectively ignores the procedural history preceding their attempt to join 141 (now 87)[1] individual plaintiffs in a *de facto* collective action, in blatant disregard of Judge Kim's thorough rejection of the same theories they now assert as a basis for Rule 20 joinder. *See Blakes v. Ill. Bell Tele. Co.*, 2013 WL 6662831 (N.D. Ill. Dec. 17, 2013). Plaintiffs instead overstate the supposed practical consequences of severing their claims and then address the joinder standards only cursorily at best. Nothing in plaintiffs' Response precludes a finding of misjoinder.

*First*, Judge Kim's ruling in *Blakes* analyzed in detail why the same diverse claims plaintiffs assert here were inappropriate for collective litigation. *See* Dkt. 116 (Def.'s Br.) at 3-9. Although it appears plaintiffs claim that the *Blakes* ruling was based solely on issues unique to the collective action mechanism and has no bearing on this "individual plaintiff" litigation, that is simply not the case. Illinois Bell's misjoinder motion explained why asserting the same claims and theories raised by these former opt-in plaintiffs in *Blakes* is an apparent attempt to circumvent Judge Kim's ruling, which should have preclusive effect here. *Id.* at 6-9. Plaintiffs continue to disregard *Blakes* by virtually ignoring it altogether and offer no meaningful response.

*Second*, plaintiffs do not even confront the Rule 20(a) standards until the tail end of their Response. When they do, they offer nothing that satisfies the Rule 20 criteria for joining their claims. This alone should end the inquiry and warrant granting Illinois Bell's motion.

*Third*, plaintiffs rely primarily on policy arguments concerning the supposed inefficiency, unfairness, and costliness of requiring them to re-plead their claims as they should have initially. But these are the same policy considerations underlying the collective action mechanism and that were insufficient to preclude decertification in *Blakes*. They are also irrelevant unless plaintiffs

---

[1] Plaintiffs Julio Inostroza and Curtis Turner recently voluntarily dismissed their claims. Dkts. 121, 129.

1

satisfy Rule 20, which they cannot do. Nonetheless, plaintiffs greatly overstate the supposed consequences of finding misjoinder. Indeed, as Illinois Bell explained (Dkt. 116 at 13-14), severance would *promote* judicial economy and safeguard fundamental fairness. Leaving these claims joined in a single action would not only contradict *Blakes*, but also prejudice Illinois Bell.

*Fourth*, plaintiffs' Response tacitly admits they misjoined their claims. Nonetheless, plaintiffs ask the Court to simply defer the question, claiming severance is "premature" (Dkt. 122 at 8), and even seem to suggest the Court itself should sift through their 1,318-paragraph Second Amended Complaint ("SAC") to isolate sub-groups of plaintiffs who might properly be joined. This is not the Court's responsibility, and plaintiffs have offered no method for doing so despite numerous opportunities to remedy their approach to this lawsuit.

*Finally*, plaintiffs misstate the relief Illinois Bell requests, which will not result in prejudice to plaintiffs whose claims may ultimately be severed. Illinois Bell does not seek dismissal of plaintiffs' causes of action outright, but rather dismissal of the SAC and *severance* of plaintiffs' actions into individual cases, with new case numbers and the applicable filing fees.

I. **ARGUMENT**

    A. **Plaintiffs Ignore The *Blakes* Decertification Order.**

Remarkably, plaintiffs' Response all but ignores Judge Kim's order decertifying the claims in *Blakes* because they were too individualized and diverse to resolve collectively. 2013 WL 6662831. As Illinois Bell explained, plaintiffs' attempt to join 87 plaintiffs who were opt-ins in *Blakes* should be barred by principles of collateral estoppel. Dkt. 116 at 7-8. Even if collateral estoppel does not apply, however, Judge Kim's reasoning effectively rejects plaintiffs' arguments for Rule 20 joinder here. *Id.* at 6-7. Plaintiffs continue to give *Blakes* short shrift and scarcely mention it, thus failing to rebut Illinois Bell's position that this *de facto* collective action is an obvious attempt to circumvent—and should be barred by—Judge Kim's ruling in *Blakes*.

2

**B.     Plaintiffs Cannot Establish The Requirements For Joinder Under Rule 20(a).**

**1.     Plaintiffs Have Not Articulated A Single "Transaction, Occurrence, Or Series of Transactions Or Occurrences."**

As Illinois Bell outlined, the 87 plaintiffs' claims are predicated on alleged conduct occurring over more than six years, at more than 48 different garages and implicating at least 160 different supervisors.  Dkt. 116 at 1.  Nearly every plaintiff reported to two or more supervisors during this time, and most worked out of two or more different garages.  *Id.* at 10.  Plaintiffs allege they worked in different types of cable splicer positions—carrying different job duties—and assert a diverse array of allegedly unpaid tasks performed for a variety of *reasons*.  *Id.*; *see also* Dkt. 116-1 (Ex. A).  On its face, the SAC includes some claims based on certain computer systems or policies that were implemented only *after* numerous other plaintiffs' employment terminated.  Dkt. 116 at 10-11.  Further, as Judge Kim concluded, plaintiffs cannot demonstrate that each of the 87 individuals was subject to any common policy or practice—much less that any single policy or practice was unlawful and *caused* the harm plaintiffs assert.  *Id.*

Addressing this critical inquiry only at the end of their Response, plaintiffs make virtually no effort to identify any common "series of transactions" supporting joinder.  Instead, they baldly assert that "[a]ll lunchtime and pre-shift claims arise out of the same series of transactions."  Dkt. 122 at 10.[2]  But this bare conclusion does not explain *how or why* this is so.  To the contrary, the SAC itself reveals that if any plaintiff allegedly worked off-the-clock, each purportedly did so for countless individual reasons.  Some allege that, on occasion, they worked through lunch to meet efficiency standards; some aver they did so while driving between sites;

---

[2] Plaintiffs' Response suggests that the *Blakes* collective action covers all "post-shift claims."  Dkt. 122 at 2, 5, 10.  But the *only* post-shift claims certified in *Blakes* concern alleged electronic time entry.  2013 WL 6662831, at *21.  Here, however, plaintiffs raise an array of other alleged unpaid post-shift activities, such as cleaning trucks, ordering supplies, reviewing blueprints, talking with other cable splicers about work, and checking email.  *See* Dkt. 116-1 (Ex. A).  Plaintiffs' Response ignores these post-shift claims.

3

some allegedly ate lunch at a manhole site to safeguard equipment, while others because they had to monitor a test; some allege a supervisor told them not to record time, while others do not; some but not all allege they worked post-shift; and the scope of both the types and causes of alleged off-shift work varies greatly by individual, supervisor, garage, and the relevant time period. *See* Dkt. 116-1 (Ex. A). In short, the SAC itself confirms that plaintiffs' claims *do not* arise from any coherent, identifiable "series of transactions."[3]

The most plaintiffs offer is that Illinois Bell's "common timekeeping and payroll systems failed to record or pay for Plaintiffs' off-the-clock work," and that Illinois Bell "managers ignored, or failed to accurately monitor, Plaintiffs' work time." Dkt. 122 at 11. The former assertion is belied by plaintiffs' own allegations. As noted, plaintiffs concede that *different* timekeeping systems applied over the relevant period, meaning that the system(s) applicable to one plaintiff may be wholly irrelevant to another. *See* Dkt. 116 at 10-11. Likewise, this assertion ignores that many plaintiffs allege unpaid work resulting from *other* causes, not the "timekeeping and payroll systems." Plaintiffs disregard the inherently individualized nature of their claims and Illinois Bell's defenses. *See Blakes*, 2013 WL 6662831, at *10-18 (outlining why each claim rests on facts unique to each individual, and purportedly common timekeeping and payroll systems are insufficient). Plaintiffs have not alleged that specific systems, such as JAM or MSOC, are unlawful or the direct source of each claim. Rather, they allege individualized factors such as pressure or fear purportedly generated by their supervisors, their

---

[3] *See, e.g.*, *McDowell v. Morgan Stanley & Co., Inc.*, 645 F. Supp. 2d 690, 695-96 (N.D. Ill. 2009) (each claim "was rooted in an individual decision, made by different supervisors, at different times, and in four different offices"); *Berry v. Ill. Dept. of Human Servs.*, No. 00 C 5538, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001) (noting the type of conduct, different supervisors, departments, locations, and time periods).

4

subjective understanding of the threat of discipline for failing to meet certain standards, their assumption that certain time should not be recorded, and their own alleged choice not do to so.[4]

Similarly, there is no way to answer whether a manager "ignored" or "failed to accurately monitor" each plaintiff's "work time" without a highly specific inquiry into the employee's activities, oversight by the individual supervisor, and the circumstances on any given day. *See Blakes*, 2013 WL 6662831, at *14-15 (Illinois Bell's knowledge of plaintiffs' unpaid time cannot "be resolved without resorting to myriad individual inquiries," "would require proof specific to individual supervisors and locations," and, ultimately, "there will be wide variations in whether those supervisors had actual or constructive knowledge that opt-in plaintiffs were hiding time").

Notably, plaintiffs do not cite a single case that supports the expansive joint action they seek to maintain, and those they do cite are readily distinguishable. *See* Dkt. 122 at 10 (citing *Rochlin v. Cincinnati Ins. Co.*, No. IP00-1898-CH/K, 2003 WL 21852341 (S.D. Ind. July 8, 2003); and *Hawkins v. Groot Indus.*, 210 F.R.D. 226 (N.D. Ill. 2002)). In *Rochlin*, the court allowed joinder of just eight plaintiffs, highlighting that their Title VII claims arose from the "centralized decision-making" of the same *two* actors. 2003 WL 21852341, at *14. Likewise, *Hawkins* involved only four plaintiffs, whose Title VII pattern-and-practice claims were confined to "the same general time period," referred to the "same type of adverse employment actions," implicated "the same set of supervisors at the same work location," and involved a "system of decision-making, or widely-held *policy of discrimination*." 210 F.R.D. at 230 (emphasis added).

Plaintiffs get no further citing *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir. 1984); *Murray v. Tyson Foods, Inc.*, No. 08-4001, 2010 WL 744302 (C.D. Ill. Feb. 24, 2010);

---

[4] Plaintiffs also suggest their claims can be joined because they "will seek similar evidence of their payroll and timekeeping records." Dkt. 122 at 9. Not only will those records still be unique to each individual, but plaintiffs allege they worked *off the clock*, meaning each claim by definition requires an inquiry about alleged time that *does not* appear on timekeeping records and the reasons *why* each plaintiff worked those hours, why it was not recorded, whether a manager knew about it, and other such inquiries.

and *Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008 (7th Cir. 1988). Dkt. 122 at 3. Even plaintiffs acknowledge that the largest of these cases involved 39 plaintiffs, less than *half* of the number attempting to join here. *Id.* at 3 (involving 22, 6, and 39 plaintiffs, respectively). More fundamentally, *not one* of these cases actually analyzed the propriety of joinder.[5]

The circumstances of these cases are also night and day from those here. In *Allen*, the 22 plaintiffs not only worked in the same position at a single location, but *all* of their alleged unpaid hours occurred during a 2 ½ month strike. 724 F.2d at 1132-34. Moreover, there was no dispute about the type of activities plaintiffs performed or the reasons for them—but rather only whether such time was compensable under the FLSA. *Id.* Likewise, in *Murray*, the six named plaintiffs each worked at a single poultry plant and raised claims about donning and doffing safety equipment; like *Allen*, there was no dispute about the tasks performed, but only whether it was compensable. 2010 WL 744302, at *1-2.

Indeed, plaintiffs' attempt to contrast two of the cases cited by Illinois Bell only demonstrates misjoinder here. Dkt. 122 at 10-11 (citing *Berry*, 2001 WL 111035; and *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010)). For example, plaintiffs note that *Berry* rejected joinder "where 33 plaintiffs were employed at six different facilities, complained of different types of mistreatment by different supervisors, and alleged different bases for discrimination against them." *Id.* Plaintiffs' own description of *Berry* demonstrates why joinder is *even less* appropriate here, "where [87] plaintiffs were employed at [48] different facilities, complained of different types of mistreatment by [more than 160] different supervisors, and alleged different bases for [requiring off-the-clock work] against them." *Id.*; *see also*

---

[5] *See Allen*, 724 F.2d at 1134-35 (assessing plaintiffs' standing, where not all filed a separate consent to join an FLSA collective action); *Murray*, 2010 WL 744302, at *1-4 (considering a protective order limiting plaintiffs' Rule 30(b)(6) deposition because the six plaintiffs maintained individual claims only, not an FLSA collective action); *Anderson*, 852 F.2d at 1009-11, 1014-18 (analyzing whether each of the 39 plaintiffs in an ADEA action was required to file a timely EEOC charge).

*Acevedo*, 600 F.3d at 522 (plaintiffs worked across numerous stores, under different managers, different working conditions, and alleged different *reasons* for alleged off-the-clock work).

In sum, plaintiffs cannot avoid that their claims are inherently individualized and, on the face of the SAC, do not arise from any single, common cause. Accordingly, there is no related, common "series of transactions" undergirding their individual claims, and joinder is improper.

### 2. Plaintiffs Have Not Identified Any Question Of Law Or Fact Common To *All* Plaintiffs.

Although Rule 20(a) does not require that every question must be common, there must be at least *some* common question capable of resolution in a single proceeding that applies to every plaintiff. Plaintiffs cannot and have not pointed to any such question here. Crucially, as discussed previously (Dkt. 116 at 12), plaintiffs have not only failed to show that Illinois Bell maintained any *unlawful* policy common to all plaintiffs or that any such policy is the basis for every claim, but they have not even alleged that each plaintiff was *subject to* the same policies over time. To the contrary, each claim is predicated on diverse individual allegations—spread among 1,300+ paragraphs in the SAC—concerning whether, when, where, and why plaintiffs allegedly worked without pay, whether (and how) their managers might have known about it, and the reasons they purportedly chose not to accurately record their time in violation of policy.

Plaintiffs respond that the "primary question of law and fact" for every plaintiff is "whether Defendant suffered or permitted the off-the-clock work." Dkt. 122 at 9. This statement merely parrots statutory language, *see* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."), and such a broad and generic formulation would encompass literally *every* FLSA off-the-clock claim. That is, if merely regurgitating base requirements of the FLSA were enough to demonstrate a common question under Rule 20(a)—without identifying anything linking each plaintiff's claim—then every FLSA off-the-clock claim conceivably could be joined in a single lawsuit. Permitting such broad-based joinder in plainly untenable because there is "no

7

common thread connecting all . . . plaintiffs," *Berry*, 2011 WL 111035, at *17, nor is there "any causal link between a common and identifiable wrongful act on the part of the defendant and the adverse actions taken with respect to each plaintiff," *Bailey*, 196 F.R.D. at 516-17.

Plaintiffs' reliance on the post-decertification proceedings in *Blakes* to *support* joinder (Dkt. 122 at 10) is surprising, given that Judge Kim rejected their attempt to litigate the same theories as an FLSA § 216(b) collective action. As Illinois Bell explained, the FLSA collective action and Rule 20 joinder inquiries are very similar. Dkt. 116 at 7-9. If anything, the collective certification standard is more lenient than Rule 20's requirement of a single "transaction, occurrence, or series of transactions or occurrences." *Id.* at 6-9.

Regardless, plaintiffs ignore significant differences in the posture of *Blakes*. Only *seven* plaintiffs with individual FLSA claims remained from what were initially also representative allegations. By that time, the parties had undergone years of contested litigation and extensive discovery relevant to those individuals (including depositions of each). Plaintiffs also note that Illinois Bell's recent summary judgment motions include similar arguments (Dkt. 122 at 10), but to even get to that point, Illinois Bell had to depose each plaintiff, process and review thousands of pages of documents and electronic data and determine the individual grounds for the motion.[6]

Contrary to plaintiffs' insinuation, each motion and its supporting materials relies on different facts concerning that plaintiff and his supervisor, position, garage, dates of employment, cable splicer position, and other unique evidence. In fact, each plaintiff's own factual statements conveyed his individual story of when and why he allegedly worked off-the-clock, how and why his supervisors purportedly knew about it, and other alleged facts.

---

[6] Plaintiffs also ignore that discovery was consolidated in *Blakes* only because it was a putative FLSA collective action. Thus, there was no opportunity to seek severance before discovery, and plaintiffs' claims reverted to individual claims only after decertification. Illinois Bell filed separate summary judgment motions and retains its ability to move for severance before trial. *See* Fed. R. Civ. P. 42(b).

*Compare, e.g.*, *Blakes*, Dkt. 299 (Blakes L.R. 56.1(b) Resp.) ¶¶ 47-60 (responding to facts concerning Blakes' alleged pre-shift work), *with* Dkt. 303 (Deckys's L.R. 56.1(b) Resp.) ¶¶49-50 (admitting Deckys does *not even allege* pre-shift work). Thus, while Illinois Bell has cited to certain company policies that are indisputably *lawful*, each plaintiff's claim necessarily revolves around inherently individualized *deviations* from those policies. The proceedings in *Blakes* only exemplify difficulties that would be multiplied more than tenfold if joinder is allowed here.

Finally, none of the cases plaintiffs cite supports their conclusory assertion that their claims will give rise to a question of fact or law common to *all* plaintiffs. Dkt. 122 at 8 (citing *Mosely v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974); *King v. Pepsi Cola Metro. Bottling Co.*, 86 F.R.D. 4 (E.D. Pa. 1979); and *Luna v. Del Monte Fresh Produce (Se.), Inc.*, No. 1:06-CV-2000-JEC, 2009 WL 4801357 (N.D. Ga. Dec. 10, 2009)). The Eighth Circuit's 40-year-old ruling in *Mosely*, for example, involved only ten plaintiffs' discrimination claims based on "the *same* general policy of discrimination on the part of [defendant]." 497 F.2d at 1333 (emphasis added); *see also id.* at 1334 (basing decision on a "*company-wide policy* purportedly designed to discriminate against blacks in employment" (emphasis added)). Plaintiffs here, however, do not identify a *single* "company-wide policy" underlying *every* plaintiff's claims, pointing instead to various, individualized reasons for their purported off-the-clock work.[7]

        **C.**      **Plaintiffs' Policy Arguments Are Inaccurate And Cannot Trump Rule 20.**

Rather than directly engage the operative legal question under Rule 20, plaintiffs focus primarily on the purported practical consequences of finding misjoinder. Not only are plaintiffs' assertions wrong, but they are irrelevant because they cannot first satisfy Rule 20(a)'s

---

[7] *King* and *Luna* serve plaintiffs no better. *King* had only six plaintiffs, four of whom were assigned to the same unit of the same plant, supervised by the same person, and the court found evidence of "a general and pervasive corporate policy of discrimination." 86 F.R.D. at 6. In *Luna*, *every* plaintiff's claim "ar[o]se from a *common* payment system dictated by *uniform* H-2A employment contracts and . . . Farm Labor Contractor ('FLC') agreements." 2009 WL 4801357, at *3 (emphases added).

9

requirements for permissive joinder. Only *after* a party satisfies those requirements should a court consider other relevant factors as a basis for nonetheless *denying* joinder. *See, e.g.*, *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) ("If joinder would create prejudice, expense or delay the court *may deny* the motion." (emphasis added, quotations omitted)); *Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000) ("For a plaintiffs' cases to be properly joined, they *must satisfy both* requirements of Rule 20(a)[.]" (emphasis added)).

Even putting aside plaintiffs' attempt to bypass Rule 20(a), they rely on the faulty premise that 87 separate actions would run parallel without the prospect of any coordination whatsoever. The critical issue here, however, is whether each of these claims should proceed in the *same* proceeding, hurtling toward a single trial. The practicalities of handling such an 87-plaintiff lawsuit (and potential trial) counsel *against* joinder, not in favor. *See* Dkt. 116 at 13-14.

Plaintiffs' argument that joinder is proper because "a joint individual action relies on individual proof, not representative proof" is puzzling. Dkt. 122 at 5. This is precisely the reason why joinder of 87 plaintiffs—each of whom must prove their claims using individualized evidence—would be unmanageable. Each plaintiff would need to establish, *inter alia*, if and when he worked without pay, the reasons for doing so, and whether supervisors knew of the allegedly unpaid work. As plaintiffs admit, these facts can only be established using individual proof, and Illinois Bell has a right to defend against *each* plaintiff's claim. There simply would be no efficient way to track individual proof for each plaintiff, discovery for all 87 plaintiffs in the same case would be cumbersome, and the likelihood of confusing a jury at trial is obvious.[8]

---

[8] *See, e.g.*, *Bailey*, 196 F.R.D. at 518 (noting that "confusion to the jury and prejudice to the defendant offset any possible benefits of a joint trial," and "[t]here is tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims"); *McDowell*, 645 F.3d at 696 ("[S]hould these claims be tried together, before a single jury, the risk of confusion, overlapping proof and duplicative testimony would be substantially increased, given the differences between each of the Plaintiffs' situations.").

Similarly, plaintiffs do not support their assertion that requiring individualized complaints under separate case numbers would "significantly increase[] the cost of litigation." Dkt. 122 at 6. They point only to "repetitive filings and depositions," *id.*, yet ignore that most of what they cite will be necessary *regardless* of whether their claims are severed. For example, the notion that severance would somehow require "89 separate answers or motions to dismiss with the necessary responses and judicial determinations" (*id.*) disregards that Illinois Bell already would be required to investigate and answer each plaintiff's existing allegations or file a separate motion to dismiss for each plaintiff, file separate summary judgment motions relying on unique facts for each plaintiff (just as it has for the seven individual claims in *Blakes*), and otherwise engage in a full defense through trial—as it is Illinois Bell's right to do. Consolidation may benefit plaintiffs, to the extent it allows them to try to lump their claims together and establish "guilt by association" (as they try to do with their 178-page SAC), but any proceeding satisfying due process requirements will require that each plaintiff's claim stands or falls on its own individual merits. The only "efficiency" derived from consolidated proceedings is if plaintiffs treat all 87 individuals as an undifferentiated mass—in essence, an FLSA collective action.

Likewise, plaintiffs' contention that severance would require "multiple separate depositions" for the various supervisors, "rather than just one deposition for all of the Plaintiffs they supervised" (Dkt. 122 at 7) is baseless. First, the SAC itself reflects the minimal overlap among the evidence and witnesses, and plaintiffs' Response bolsters this point by highlighting three supervisors who, collectively, supervised only 10 of the 87 plaintiffs (not to mention other supervisors these plaintiffs may have had over time). *Id.* at 6. Plaintiffs also do not consider that a single supervisor may have had different interactions with different plaintiffs at different times. Plaintiffs' claims require individualized, plaintiff-specific testimony from each supervisor at each deposition that cannot be handled by a single, omnibus deposition. Although the parties

11

could try to coordinate to avoid repetitive testimony, this does not mean that every plaintiff should be pursuing their individual claims in a *single* case.[9]

Plaintiffs also should not be exempt from the same filing fee they would have owed had they filed individually in the first place. They invoke the FLSA's purported cost-savings goal but cite only a case about the availability of a collective action. Dkt. 122 at 7 (citing *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989)). Plaintiffs also beg the question by arguing that requiring each plaintiff to pay separate filing fees "when they *could proceed together*" would be inconsistent with the FLSA. *Id.* at 7 (emphasis added). This is *not* a collective action, and plaintiffs cannot properly "proceed together" because they cannot satisfy Rule 20(a). Indeed, plaintiffs concede that "Congress did not exempt FLSA plaintiffs from paying the filing fee required by 28 U.S.C. § 1914(a)." *Id.* The Court should not allow them to simply invoke the FLSA as an immunity from statutory filing fees or other Rule 20 requirements. *See* Dkt. 116 at 15 & n.11 (citing cases requiring fees for misjoined plaintiffs).

Finally, plaintiffs do not meaningfully address Illinois Bell's concerns that interfacing with five independent law firms representing seemingly unrelated groups of plaintiffs will frustrate Rule 20's goal of judicial economy. *See* Dkt. 116 at 13. Plaintiffs suggest only that their various attorneys could designate a lead or liaison counsel. Dkt 122 at 8. But the parties still would need to waste time jumping through hoops in exchanging sensitive personnel material, handling otherwise routine scheduling issues, and dealing with matters that would be routine when only one law firm could speak for all plaintiffs.[10] Likewise, depositions will be

---

[9] Plaintiffs do not claim *they* would be subject to the burden of multiple depositions—only Illinois Bell's managers. Any prejudice this might impose is far less than that of a single, consolidated proceeding.

[10] Indeed, the notion of a liaison counsel is somewhat baffling here, where plaintiffs were all originally represented by a single law firm (Maduff & Maduff), who brought in additional firms after this suit was filed—only adding complexity to this already unwieldy amalgamation of disparate claims.

difficult and tedious under the circumstances. Do plaintiffs intend to designate a single attorney to take a supervisor's deposition, even though the supervisor oversaw plaintiffs represented by different counsel? Or do they intend to take turns questioning a witness, in which case it would be no different than separate depositions? Simply put, there is no practical benefit to proceeding with this suit as styled, which will only render proceedings more cumbersome and protracted.

      **D.**    **Plaintiffs Effectively Concede Their Claims Are Misjoined As Pled, Yet Offer No Alternative Basis For Joinder.**

Plaintiffs essentially admit that their claims are in fact misjoined, but suggest that "[e]ven if one trial of 89 plaintiffs' claims is not practical," their claims may be severed for trial and thus is "premature" now. Dkt. 122 at 8. This is simply incorrect. To begin, plaintiffs have not even *attempted* to explain how "one trial of 89 plaintiffs' claims" could ever be "practical." That aside, before the Court can consider severing plaintiffs' claims *later*—thus allowing this action to proceed as pled in the SAC—it first must find they are properly joined *now*. Illinois Bell should not have to endure lengthy discovery concerning a variety of misjoined plaintiffs—a *de facto* collective action—only to have this case broken into smaller groups at a later date, when the Court can readily resolve the issue now. Plaintiffs must have a reasonable basis at the time they filed their SAC for purporting to join their claims under Rule 20. They should not be permitted to await the conclusion of expansive and costly discovery with respect to 87 different plaintiffs if those individuals do not belong in the same suit from day one.

Plaintiffs further imply that they know their claims are misjoined by intimating—though never actually requesting—that the Court should break them up into smaller groups and that this would somehow cure the deficiencies in the SAC. *See, e.g.*, Dkt. 122 at 1 (suggesting that if, "after joint discovery," the Court finds "that the remaining Plaintiffs are too numerous for one trial, the remaining Plaintiffs may then be severed into appropriate sized groups for trial"); *id.* at 8 ("[E]ven if smaller groups go to trial, joint discovery will speed resolution.").

13

The Court should reject this approach out of hand. Plaintiffs have filed three different complaints, and Illinois Bell has presented multiple opportunities to cure the deficiencies raised in its Motion. *See* Dkt. 116-2, Ex. B. Despite possessing discovery from *Blakes* and having ample time to confer with each of their clients, plaintiffs' counsel have refused to change tack. It is not Illinois Bell's responsibility—and certainly not the Court's—to parse through their prolix, 178-page SAC and attempt to determine which plaintiffs might be grouped together to have better odds at satisfying Rule 20. Notably, plaintiffs' Response does not make any effort to identify these purportedly appropriate "smaller groups." Even if some proper alignment were possible, plaintiffs cannot now use their all-or-nothing proposition of a joint 87-plaintiff case versus 87 individual actions to nullify Rule 20's express requirements. Plaintiffs have elected to stand on their SAC, and the Court should reject any suggestion that they can, finally, try to cure—in some unknown and unexplained fashion—only after Illinois Bell sought misjoinder.

E. **Plaintiffs Misstate The Relief Requested By Illinois Bell's Motion.**

Finally, plaintiffs argue that Illinois Bell seeks dismissal of this entire *action* without prejudice, and that granting such relief would result in the expiration of the statute of limitations for some plaintiffs. Dkt. 122 at 4. This misstates the relief Illinois Bell seeks, which is the *severance* of plaintiffs' individual claims, each with a new complaint in a new case. Dkt. 116 at 2 (stating relief sought, including to "sever each plaintiff"); *id.* at 13 ("Severance Would Promote Fairness And Judicial Economy."); *id.* at 14-15 (citing cases requiring new complaints "after severance," and noting that courts "regularly required severed plaintiffs to pay the filing fees").

The important distinction is between the dismissal of a complaint or a "claim" as stated therein, and an outright dismissal of a plaintiff's *cause of action*. Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action," though a court may "add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. Thus, "[w]hen a federal

14

civil action is severed, it is not dismissed." *Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011). For every plaintiff but Adkins, therefore, Illinois Bell seeks severance, such that each plaintiff who opts to maintain his claim (which is dismissed from *this* case along with the SAC) must file a new complaint under a new case number and pay the applicable filing fee.[11]

Consequently, granting the relief Illinois Bell requests will not result in the prejudice plaintiffs suggest related to the dismissal of an *action*. The dismissal of only a *complaint* does not treat the original action as though it was never filed, *cf. Lee*, 635 F.3d at 971-72, and any subsequent claim might be deemed to "relate back" to the original filing date for limitations purposes (if appropriate), *see, e.g., Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022-24 (7th Cir. 2013). Thus, if the Court agrees that plaintiffs' claims are misjoined, Illinois Bell asks that it dismiss the SAC, retain jurisdiction over plaintiff Adkins only, *sever* each individual plaintiff, order each plaintiff (including Adkins) to file a new, appropriately individualized complaint in each case (should they choose to do so); and pay the requisite filing fee. *See* Dkt. 116 at 14-15.

## II. CONCLUSION

For the reasons set forth above and in Illinois Bell's opening brief, Illinois Bell requests that the Court grant its Motion.

---

[11] *See, e.g., McDowell*, 645 F. Supp. 2d at 697 (retaining single plaintiff's claims and ordering that "[a]ll other claims and allegations as to the three remaining Plaintiffs shall be severed . . . , and it is left to those Plaintiff to file new complaints, which will be assigned new case numbers and will be randomly assigned new judges in accordance with the usual procedures in the courts of proper venue"); *see also* Dkt. 116 at 14-15 (collecting cases).

Dated: October 6, 2014                    Respectfully submitted,

By: /s/ Gregory P. Abrams

George A. Stohner (*pro hac vice*)
Gregory P. Abrams
Rita Srivastava
Matthew A. Russell
Morgan, Lewis & Bockius, LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
312.324.1000
gstohner@morganlewis.com
gabrams@morganlewis.com
rsrivastava@morganlewis.com
marussell@morganlewis.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that on October 6, 2014, a true and correct copy of the foregoing document was served by electronic means through the Court's ECF system to all counsel of record, namely:

| | |
|---|---|
| Aaron Maduff | Brian D. Massatt |
| Michael Maduff | Law Office of Brian D. Massatt |
| Walker Lawrence | 8824 Glenshire Street |
| Maduff & Maduff LLC | Tinley Park, Illinois 60487 |
| 205 N. Michigan Avenue, Suite 2050 | bmassatt@comcast.net |
| Chicago, IL 60601 | |
| ABMaduff@madufflaw.com | |
| MLMaduff@madufflaw.com | |
| WRLawrence@madufflaw.com | |
| | |
| Colleen M. McLaughlin | John Billhorn |
| Elisa Hobfoll | Billhorn Law Firm |
| Law Offices of Colleen M. McLaughlin | 120 S. State Street, Suite 400 |
| 1751 S. Naperville Rd. Ste 209 | Chicago, IL 60603 |
| Wheaton, IL 60189 | jbillhorn@billhornlaw.com |
| colleen@cmmclaw.com | |
| elissa@cmmclaw.com | |
| | |
| Mario Uteras | |
| Uteras Law Offices, Inc. | |
| 205 W. Wacker Dr., Suite 1600 | |
| Chicago, Illinois 60606 | |
| mutreras@utreraslaw.com | |

                                                   /s/ Gregory P. Abrams

                                                 *Attorney for Defendant*